SUSAN M. CHEHARDY, Judge.
 

 | gThis is a worker’s compensation proceeding, in which the claimant appeals a ruling that dismissed his claim as prescribed. We reverse and remand.
 

 
 *984
 

 FACTS AND PROCEDURAL HISTORY
 

 Martin Manning, a delivery truck driver, suffered injuries to his back, neck, and jaw/teeth on November 19, 2005, when he slipped and fell while making a delivery to a restaurant. Manning is a New Mexico resident who was recruited by TeamWorks USA, Inc., a Maryland company, for temporary work at Caro Foods, Inc., a food product delivery service in Houma, Louisiana, following Hurricane Katrina.
 

 On November 16, 2006 Manning filed a Disputed Claim for Compensation against TeamWorks USA, Inc. and its insurer.
 
 [1]
 
 On June 18, 2007 he amended his worker’s compensation claim to add PFG-Caro Foods (hereafter “Caro”) as a defendant.
 
 [2]
 

 | «TeamWorks filed a motion for summary judgment, asserting it is not obligated to provide worker’s compensation benefits to Manning because it was not the claimant’s employer at the time of the accident.
 
 [3]
 
 The court denied TeamWorks’ motion for summary judgment prior to trial.
 
 [4]
 

 On January 19, 2010, the day before trial, counsel for the claimant filed a Motion for Partial Dismissal without Prejudice as to TeamWorks USA, Inc. and Travelers Indemnity Company, asking for dismissal of all claims as to those defendants only, without prejudice.
 

 The trial was held on January 20, 2010. At the outset counsel for the claimant announced that her client wished to dismiss TeamWorks and its insurer, Travelers, without prejudice. The court orally granted the motion to dismiss, and also pro
 
 *985
 
 nounced TeamWorks’ motion for summary-judgment moot.
 

 Immediately after the court orally granted the motion to dismiss TeamWorks and Travelers, counsel for Caro filed a handwritten peremptory exception of prescription. He argued that the claim on its face was prescribed as to Caro, because although the suit was filed timely against TeamWorks, TeamWorks was never the claimant’s employer and should not have been part of the suit, so the addition of Caro after the one-year anniversary could not relate back to the original filing date of the claim.
 

 |4In the written exception, Caro asserted as follows: Caro Foods, Inc. was the claimant’s sole employer at the time of the accident. Caro did not share employment of the claimant at the time of the accident with anyone else. As Caro was not sued until more than one year after the accident date, Caro was not timely sued. Caro paid all of the claimant’s wages and had sole, complete control over the actions of the claimant. Caro never paid any medical benefits for the claimant. Medical bills paid by Caro immediately after the accident were not paid as worker’s compensation benefits. They were paid simply to insure that an injured employee did not require additional medical attention. Caro has never accepted the claimant’s claim as timely and compensable.
 

 After an off-the-record discussion with counsel, the judge decided to rescind the granting of the motion to dismiss because of the issue raised by the exception of prescription. The judge stated from the bench:
 

 Let the record reflect that the Court had rendered a decision with reference to the Motion to Dismiss before the Court was aware there was an issue as to the Exception of Prescription ...
 
 and the claimant did indicate that he did not want parties dismissed from this case.
 

 So it is the opinion that the Court is not going to bifurcate any matters. So the issues that were dictated into the record earlier with reference to the Motion to Dismiss Teamworks and Travelers is rescinded and set aside and this matter will go forward to trial on the merits. The Court will consider ... the ruling on the exception before a decision is made in this case.
 

 And the Court has rescinded its earlier decision because new information has been brought to the Court’s attention. And it’s the opinion of the Court that I’m going to try this case totally. I’m not going to bifurcate any issues, and we’re going to go forward with trial on the merits today. [Emphasis added.]
 

 At that point the following joint stipulations by the claimant and Caro were read into the record:
 

 |fil. Martin Manning registered with Teamworks to be put onto a list of people to call in the event Team-works negotiated a contract with a third-party to provide services to that third-party for which Manning was qualified to perform those services.
 

 2. In August of 2005, Martin Manning was contacted by Teamworks and told to report to Caro Foods in Bayou Blue Louisiana where he would be told what Caro expected out of him while working to carry out Caro’s obligations to its customer.
 

 3. Caro assigned Martin Manning and a supervisor, both of whom came to Caro only through Teamworks, to deliver products from Caro to various fast-food locations in Louisiana and Mississippi.
 

 4. While making a delivery of products from Caro using a truck and trailer provided by Caro, Martin Manning
 
 *986
 
 and his supervisor from Teamworks teamed together to deliver products to a Popeye’s franchise location in Belle Chasse, Louisiana.
 

 5. While performing the duties of the job assigned to him and his supervisor by Caro, Martin Manning slipped and fell, hurting his low back, back of his head, and several of his front teeth.
 

 6. While working, Manning was paid for the services he performed on behalf of Caro, by Caro through Caro’s payroll department.
 

 7. While still in Louisiana and before leaving to return to his home in New Mexico, Mr. Manning was examined and treated by at least one physician selected by Caro.
 

 8. Without his “registration” with Teamworks as a laborer who was ready to be called to work wherever needed in the US, Mr. Manning had never heard of Caro and obviously would have never appeared at Caro to perform the duties on behalf of Caro but for Teamworks contacting him and requesting that he report to Caro for a job.
 

 The claimant’s exhibits 1 through 19
 
 in globo
 
 were admitted without objection from the defendants.
 

 | ,;First Day of Trial: Testimony
 

 At trial the witnesses were Martin Manning, the claimant; Jack Poulson, another worker who had been placed at Caro by TeamWorks; Ralph Boudreau, president of Caro; and Martin Herman, president of TeamWorks.
 
 [5]
 

 The claimant testified he got the job at Caro in November 2005, through Team-Works. The claimant testified to the events of the accident. He also testified that several days after the accident, when he still could not return to work, Jack Poulson took him to a doctor in Houma at the expense of Caro. The doctor told him he could return only to light-duty work, gave him medication, and recommended he see an orthopedic specialist.
 

 The claimant reported the doctor’s findings to Poulson and to Matt Lowley, who was Caro’s human resources manager. Lowley initially told him they would take care of everything, then said he would “get back to” the claimant, but he never got back to him. Other than the initial visit to the doctor in Houma, neither Caro nor TeamWorks paid any further medical expenses on his behalf. They did not offer him light-duty work or pay him workers’ compensation benefits or send him to a vocational consultant to help him try to find work he was capable of doing.
 

 He continues to have great back pain, and has been unable to return to work because of his pain levels and physical limitations. He continues to take pain medication, which prevents him from driving a truck. His medical treatment after the initial doctor visit in Houma has been paid by public assistance in the places where he’s lived (New Mexico and New Zealand).
 

 The claimant testified that after it was determined he could not return to work at his regular duties, he was fired from the job by Jack Poulson. He said Poulson told him, “We’re going to send you home,” and Poulson specifically said |7he was fired. The claimant said that when he first met Poulson, Poulson told him, “I’m the supervisor for TeamWorks.”
 

 On cross examination, the claimant testified he never filled out a job application for TeamWorks. Rather, he contacted Team-Works to be put on a list to make his name available for jobs. He had to provide TeamWorks with information, including
 
 *987
 
 his driver’s license, Social Security number, work history, and a medical certificate for a commercial driver’s license. He never went to the TeamWorks office, which was in Maryland, nor sat down with anyone from TeamWorks face-to-face. Team-Works did not provide any training, nor send him to another doctor for an examination.
 

 The claimant testified that after he went to work in Houma, his paychecks were from Caro. His assignments and work schedules came either from Jack Poulson or from the Caro dispatcher. The trucks he drove and the equipment he used were provided by Caro. His housing while he worked at the terminal was provided by Caro.
 

 Jack Poulson testified he got the job at Caro in 2005 through TeamWorks. He was the coordinator, which entailed bringing drivers in and making sure they got off on their routes. His paycheck was from Caro. All his drivers were working for Caro.
 

 Poulson testified he was called after the claimant’s accident and arrived on the scene quickly. He said the claimant had slipped on the wet floor, and the hand truck came down on top of him with frozen food products on it. The claimant was hurt in the accident. When Poulson took the claimant to the doctor to be checked out, they learned his back was messed up.
 

 Poulson testified that at some point he had to tell the claimant he was no longer needed on the job. Poulson first said it was because he wasn’t wearing the | sright footwear for the job, although he had been warned several times, and that is what caused him to slip. Poulson said he told the claimant they could no longer use him because he was hurt. Poulson said he had been instructed by a Caro employee name Gale that they no longer needed the claimant as an employee. Gale was in charge of the Caro drivers. Gale told Poulson he didn’t want the claimant on the job any more because he had hurt himself and they could no longer use him because he couldn’t work. Poulson told Gale he would get a replacement for the claimant. He said in letting the claimant go, he was following Gale’s instructions.
 

 Poulson testified that for the entire time he worked at the Caro site, all of his payments were from Caro, and all instructions, routes, and equipment were provided by PFG-Caro Foods. Asked whether TeamWorks played any role in how he performed his job, Poulson said they controlled who he did or didn’t hire, as well as the pay schedule. TeamWorks did not tell him how to perform the job as to Caro; Caro instructed him on everything except for picking the drivers. He had a list of drivers he called to come in that was provided by TeamWorks.
 

 Ralph Boudreau, president of Caro, testified the claimant came to work for his company after Hurricane Katrina. Because of the chaos and lack of employees to deliver products to their customers, they contacted TeamWorks to provide drivers. When the drivers arrived, all orders and directions regarding their jobs came through the Caro transportation department. TeamWorks did not exercise any authority over the people after they arrived at the PFG-Caro plant. Poulson coordinated the group of drivers from TeamWorks and directed them where they were needed. Poulson and the claimant were paid by Caro. Boudreau was not aware of the claimant receiving any payments or direction from TeamWorks while he worked for Caro.
 

 13Boudreau stated that at all times the claimant was performing driving services for Caro. The transportation manager at the plant was Gale; Gale had authority to hire and fire workers. Under the contract with TeamWorks, Caro was responsible to
 
 *988
 
 provide a safe place to work, equipment, general or clinical supervision, all payroll, all benefits, application insurance, and to review the credentialing packages of the drivers to determine whether the driver had the skill and experience Caro required. Caro provided the workers’ compensation insurance.
 

 Boudreau reviewed the contract between TeamWorks and Caro, reading at counsel’s direction clauses titled “Rate” and “BuyOut.” Under the Rate clause, TeamWorks charged Caro (referred to as “Client” in the contract) a “finders fee” of 15% of each person’s weekly bill rate. The Buy-Out clause states, “If at any time Client and professional both desire that professional become an employee of Client, this may be accomplished by written agreement between Client and TeamWorks. In doing so, Client agrees to pay a reasonable buyout fee, which will be determined by negotiation at the time of the proposed buyout.” Boudreau stated “professional” refers to a CDL driver. He interpreted the Buy-Out clause to mean that a CDL driver such as the claimant is not an employee until there’s a written agreement between the client and TeamWorks. He said Caro was paying TeamWorks a fee for all the people they brought in, which was a percentage of their weekly rate.
 

 The final witness, Martin Herman, president of TeamWorks, testified TeamWorks is a staffing agency that provides both hourly placement and temporary placement of various workers, including truck drivers, warehouse people, and skilled plant staff.
 

 | inHerman said the process starts with a call from a customer, who tells Team-Works what they’re looking for. Team-Works looks into its own resources to see what’s available, then calls back the customer to explain what is available and to see if there is a match.
 

 Herman was familiar with the contract between TeamWorks and Caro. He testified that Caro called TeamWorks as a result of a labor shortage and asked for truck drivers to deliver their food products. They negotiated terms in the contract so that TeamWorks would not be the employer, but would act as a placement service.
 

 Herman said at the time the state of Louisiana had a flood of contractor inquiries and responses and could not handle TeamWorks’ request for workers’ compensation coverage. TeamWorks was told it would take about three months just to get coverage. In order to lawfully fulfill the contract, TeamWorks had to act as a placement service and could not carry the benefits associated with the contract. TeamWorks was to act strictly as a placement service.
 

 According to Herman, under the contract it was Caro’s responsibility to provide workers’ compensation and all insurance benefits. TeamWorks recruited the workers, but did not pay any wages of those workers. TeamWorks did pay travel expenses for the workers, but those were billed back to Caro.
 

 Herman said Manning was referred to Caro under that contract. TeamWorks did not buy insurance for him or any of the drivers. After the workers arrived in Louisiana, TeamWorks did not provide any equipment, instruction, or supervision. Nor did TeamWorks prepare schedules or route plans.
 

 According to Herman, once drivers were referred to Caro, TeamWorks could not fire them, It would be up to Caro to terminate them, because they were Lion the Caro’s payroll. TeamWorks never considered Manning to be its employee because he wasn’t under its direction and wasn’t on its payroll.
 

 
 *989
 
 Asked about the Buy-Out clause, Herman explained that in some cases, rather than do the temporary arrangement such as they contracted in this agreement, the client may want to make an offer for long term. He said the Buy-Out clause opens the opportunity to offer clients a flat fee versus a continuous weekly basis fee. It’s a different way for TeamWorks to get paid. Caro, however, did not keep on TeamWorks’ people any longer than a few months.
 

 On cross examination by counsel for Caro, Herman stated TeamWorks did not have workers’ compensation insurance or employee liability insurance for Caro. It had no direction or control over Manning; any supervisors he had were Caro employees. Herman denied that TeamWorks sent any of its own employees to the Caro job. He said Jack Poulson was on Caro’s payroll, but he was not on TeamWorks’ payroll. No one on the payroll of Team-Works as an employee worked at the Caro plant during the entire time TeamWorks and Caro had a contract together to fulfill Caro’s needs right after Hurricane Katrina.
 

 On cross examination by the claimant’s counsel, Herman testified that TeamWorks would not have been able to re-assign a driver once the driver was assigned to Caro. He acknowledged that for each week that the drivers they sent to Caro worked at Caro, Caro paid TeamWorks an agreed-upon price.
 

 If they wanted to make Manning a long-term employee, then TeamWorks would negotiate some type of buyout amount. Herman described the buy-out clause as “generic.” He said the idea behind it is that if the client wants to hire a guy for the next ten years, it gives the client a way to get off the weekly fee. According to Herman, the buyout clause was never exercised.
 

 | ^Herman acknowledged that Team-Works describes itself as a temporary staffing agency, but he said that for this contract, Manning was not a temporary employee. Herman said “temporary staffing agency” is a generic term; in this case TeamWorks acted as a placement agency, not as the employer.
 

 Herman said that typically, in recruiting workers the prospective worker will fax in a copy of his credentials that say he is an authorized CDL driver. In turn, Team-Works refaxes those credentials to the employer to make the hire of that individual. Herman testified that Jack Poulson was placed on Caro’s payroll by TeamWorks and that Poulson had a list of other drivers supplied to Caro from TeamWorks.
 

 The trial was recessed until a later date to allow time for marshaling of other evidence and for counsel to file memoranda regarding Caro’s exception of prescription.
 

 Activity Between Trial Days
 

 On February 4, 2010 the claimant filed an opposition to the exception of prescription, attaching documentation of the following matters:
 

 1. The claimant filed a worker’s compensation claim in Maryland on March 8, 2006, listing the employer as “Teamwork Staffing Service.” On June 26, 2006, he added Performance Food Group as employer. None of the documents indicate a resolution of the Maryland worker’s compensation claim; however, in brief to this Court, the claimant has acknowledged that the Maryland workers’ compensation claim was dismissed on the basis of improper venue and lack of jurisdiction. The claimant argued that Performance Food Group a/k/a Caro thus was timely sued and had full knowledge Manning was pursuing legal reme
 
 *990
 
 dies against it regarding the worker’s compensation claim.
 

 11⅞2. Manning filed a tort lawsuit on November 7, 2006 in the Jefferson Parish district court, naming as defendants Popeye’s, Inc., and others, including TeamWorks and Caro.
 
 [6]
 
 TeamWorks filed its answer on April 20, 2007, pleading the exclusive remedy provisions of the Louisiana worker’s compensation laws.
 
 [7]
 
 8. Caro intervened in the tort suit.
 

 4. The Louisiana worker’s compensation claim naming TeamWorks as employer/defendant was filed on November 16, 2006, and an amended claim was filed on June 18, 2007, naming Caro as an employer/defendant.
 

 On March 17, 2010, the court issued a judgment that denied Caro’s exception of prescription and granted Travelers’ Motion for Summary Judgment, dismissing Travelers.
 

 Second Day of Trial
 

 On May 12, 2010 the trial resumed, but no further testimony was taken. Counsel for TeamWorks introduced the deposition of Martin Herman, TeamWorks’ president. The parties were granted time to file post-trial memoranda.
 

 Post-Trial Rulings
 

 On August 10, 2010, the court issued judgment finding that the claimant had a work-related accident on November 19, 2005, while he was employed by “Caro Foods, LLC.” The court granted the claimant’s voluntary motion to dismiss TeamWorks USA, granted the exception of prescription filed by “the employer, Caro Foods, LLC,” and dismissed the case.
 

 | HThe claimant filed a timely motion for appeal on August 18, 2010 and the order of appeal was granted on August 19, 2010.
 

 On October 18, 2010, the court issued written Reasons for Judgment, as follows in pertinent part:
 

 The claimant, Martin Manning ..., was employed by Performance Food Group, doing business as Caro Foods, as a truck driver. Claimant was also employed by Teamworks Staffing Services of Maryland, and he was assigned to work in Louisiana for Caro Foods. It is uncontested that the claimant was injured by accident in the course and scope of his employment, on November 19, 2005. Claimant filed a workers’ compensation claim in Maryland on March 8, 2006 against Teamworks Staffing Services. On June 26, 2006, he added Performance Food Group/Caro as his employer. A tort suit was filed in Louisiana in the 24th Judicial District Court on November 17, 2006 against various defendants, including Teamworks and Performance/Caro. Claimant filed a Louisiana Workers’ Compensation Claim on November 16, 2006 against Team-works. Claimant amended his claim to add Caro as a defendant on June 18, 2007. Teamworks and Caro were dismissed from the tort suit. The night before the trial on January 20, 2010, claimant’s attorney fax filed a “Motion to Dismiss Teamworks.” The claimant’s attorney agreed to the dismissal of Teamworks on the morning of the trial.
 

 
 *991
 
 Thereafter, the court granted the request for dismissal of Teamworks. Thereafter, Caro filed an “Exception of Prescription” in open court. The court rescinded the order dismissing Team-works. The court deferred ruling on the “Exception of Prescription” until the end of trial. The trial was held and a judgment was rendered.
 

 [[Image here]]
 

 Findings of Fact
 

 (1) Claimant was injured by accident on November 19, 2005, during the course and scope of his employment with Teamworks and Caro Foods.
 

 (2) Claimant filed a workers’ compensation claim in Maryland on March 8, 2006 against Teamworks Staffing Services.
 

 (3) Claimant added Performance Food Group, doing business as Caro, as defendant in the Maryland claim in June 2006.
 

 11fi(4) The claim in Maryland was dismissed for lack of jurisdiction.
 

 (5) Claimant filed a Louisiana Workers’ Compensation claim on November 16, 2006 against Teamworks.
 

 (6) Claimant amended his Louisiana Workers’ Compensation claim to add Caro as a defendant on June 18, 2007.
 

 (7) Claimant filed a tort suit in the 24th Judicial District Court in Louisiana on November 17, 2006 against various defendants, including Teamworks and Caro Foods.
 

 (8) Teamworks and Caro were dismissed from the tort suit.
 

 (9) On the night of January 20, 2010, claimant’s attorney faxed filed a “Motion to Dismiss Teamworks” as defendant.
 

 (10)On the day of the trial, claimant’s attorney agreed to the dismissal of Teamworks and the court granted the dismissal.
 

 (11) At trial, the attorney for Caro filed an “Exception of Prescription” which was heard. The court rescinded the dismissal and deferred ruling on the Exception of Prescription until the end of the trial.
 

 (12) The medical claims of the claimant have not prescribed, because medical bills were paid by Caro.
 

 (13) Teamworks was sued timely.
 

 (14) Caro Foods was not sued timely for indemnity.
 

 (15) The trial was held and the matter was taken under advisement after briefs were received.
 

 (16) The court granted claimant’s “Motion to Dismiss” Teamworks.
 

 (17) The court granted defendant’s “Exception of Prescription” filed by Caro Foods.
 

 (18) Judgment was rendered.
 

 (19) Written Reasons were requested.
 

 [[Image here]]
 

 Conclusion
 

 The claimant, Martin Manning was injured by accident in the course and scope of his employment with Team-works Staffing Services and Performance Food Group/Caro Foods. Both of these employers exercised control over various aspects and duties during the claimant’s employment which is delineated in details herein.
 

 Nevertheless, this claim has had various attorneys. It has been filed in several courts, Maryland Workers’ Compensation Court, 24th Judicial District Court, in | T fiLouisiana and Workers’ Compensation Court in Louisiana. There have been various rulings on jurisdiction, tort coverage, venue, etc.
 

 
 *992
 
 After trial on the merits, it was established that the claimant worked for both employers. They both retained some control over various aspects of his job at the time of the accident. The claimant suffered a compensable work related accident. The claim was dismissed by claimant’s attorney against Teamworks. She did not ask for the dismissal to be rescinded. The defendant, Performance Food Group/Caro, was not added to the Louisiana Workers’ Compensation claim until June 18, 2007, almost 2 years after the accident. Therefore claimant’s rights to indemnity against Caro have prescribed, but the medical claim is still viable. Claimant had a valid claim for all workers’ compensation benefits against Teamworks, but they were dismissed by them. The claimant had a valid claim against both employers that became entangled in a coverage dispute to his detriment. These delays affected the outcome of the case.
 

 LAW AND ANALYSIS
 

 On appeal, the claimant raises the following assignments of error:
 

 1. The trial court erred in failing to order Caro to pay medical benefits and failing to assess penalties and attorney fees against Caro for its termination of medical benefits and non-payment of medical bills.
 

 2. The trial court erred in granting the Exception of Prescription in favor of Caro, when a claim had been timely filed and served in Maryland and a new claim filed within the one-year period after the Maryland claim was dismissed.
 

 3. The trial court erred in granting Caro’s Exception of Prescription when the claimant had timely filed a tort suit in relation to the accident and injuries involved herein.
 

 4. The trial court erred in dismissing TeamWorks pursuant to Claimant’s Motion to Dismiss TeamWorks, when claimant had already withdrawn the motion and the Court had already denied the motion.
 

 117The applicable standard of review for a factual finding is the manifestly erroneous or clearly wrong standard.
 
 S.J. v. Lafayette Parish School Bd.,
 
 2009-2195 (La.7/6/10), 41 So.3d 1119, 1127. An independent
 
 de novo
 
 review by the appellate court is proper only “[w]here one or more trial court legal errors interdict the fact-finding process” and “the record is otherwise complete.”
 
 Id.,
 
 41 So.3d at 1128. Questions of law, such as the proper interpretation of a statute, are reviewed under the
 
 de novo
 
 standard of review.
 
 Louisiana Municipal Association v. State,
 
 2004-0227, p. 35 (La.1/19/05), 893 So.2d 809, 836.
 

 La. R.S. 23:1209(A)(1) provides that claims for worker’s compensation payments are forever barred unless a formal claim has been filed within one year after the accident.
 

 1. Medical Benefits
 

 The Judgment was silent on medical benefits, although the later-filed Reasons for Judgment stated, “The medical claims of the claimant have not prescribed, because the medical bills were paid by Caro.” On appeal the claimant asserts the trial court erred in failing to order Caro to pay medical benefits and failing to assess penalties and attorney fees against Caro for its termination of medical benefits and non-payment of medical bills.
 

 La. R.S. 23:1209(0 provides in pertinent part:
 

 All claims for medical benefits payable pursuant to R.S. 23:1203 shall be forever barred ... unless within one year after the accident a formal claim has been filed with the office.... Where such payments have been made in any case, this limitation shall not take effect until
 
 *993
 
 the expiration of three years from the time of making the last payment of medical benefits.
 

 The employer is required to “furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment” to workers’ compensation | isclaimants. La. R.S. 23:1203(A). The medical bills “shall be paid within sixty days after the employer or insurer receives written notice thereof.” La. R.S. 23:1201(E).
 

 La. R.S. 23:1201(F) provides that failure to provide payment shall result in the assessment of a penalty, either a percentage of the unpaid medical benefits or a per diem amount, whichever is greater, with reasonable attorney’s fees, up to a maximum of $8,000.00.
 

 “When an employer has failed to pay worker’s compensation benefits, the proper standard of review for that decision is whether the employer reasonably controverted the claim.”
 
 Branch v. New Orleans Saints,
 
 09-910, p. 9 (La.App. 5 Cir. 2/23/2010), 31 So.3d 627, 632,
 
 writ denied,
 
 2010-0769 (La.06/04/2010), 38 So.3d 304. “A claim for worker’s compensation benefits is reasonably controverted if the employer has some valid reason or evidence upon which to base his denial of benefits.”
 
 Id.
 

 It is uncontroverted that the claimant was injured in the accident and that he needs further medical treatment. It is uncontroverted that Caro paid and/or guaranteed the claimant’s medical bills shortly after he was injured. Hence, the plea of prescription cannot be applied to the medical benefits claim. Further, Caro did not respond to the claimant’s demands for payment of medical bills beginning in January 2008 and thereafter.
 

 We find merit to this assignment. The court erred in failing to order that the medical bills be paid, and in failing to assess penalties and attorney’s fees against Caro. On remand the trial court is instructed to address the medical benefits, penalties and attorney’s fees in accordance with this opinion.
 

 2. Prescription as to Caro
 

 We combine discussion of the second and third assignments because they both concern prescription of the claim against Caro.
 

 |1flIn his second assignment, the claimant asserts the trial court erred in granting the Exception of Prescription in favor of Caro, when a claim had been timely filed and served in Maryland and a new claim was filed within the one-year period after the Maryland claim was dismissed.
 

 In his third assignment, the claimant contends the trial court erred in granting Caro’s Exception of Prescription when the claimant had timely filed a tort suit in relation to the accident and injuries involved herein.
 

 Prescription is interrupted when the ob-ligee commences action against the obligor in a court of competent jurisdiction and venue. La. C.C. art. 3462. “If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period.”
 
 Id.
 

 “If prescription is interrupted, the time that has run is not counted. Prescription commences to run anew from the last day of interruption.” La. C.C. art. 3466.
 

 In
 
 Totty v. Dravo Corp.,
 
 413 So.2d 684, 686 (La.App. 3 Cir.1982), the first circuit found the filing of a workers’ compensation claim in Illinois, along with notice thereof received by the defendants, all within Louisiana’s one-year prescriptive period, interrupted the running of prescription such that the Louisiana workers’ compensation
 
 *994
 
 suit filed two years and two months post-accident was timely. The court emphasized the reasons for the time limitation of the Workers’ Compensation laws and concluded those reasons were met in the case before it:
 

 “The purpose of the requirement that a suit be brought by the claimant within one year after the accident under the penalty of barring his recovery is of a three fold nature; (1) to enable the employer to determine when his potential liability for an accident would cease; (2) as a matter of public policy to prevent suits based on stale claims where the evidence might be destroyed or difficult |anto produce; (3) to fix a statute of repose giving rise to a conclusive presumption of waiver of his claim on the part of an employee where he fails to bring his suit within the fixed period.”
 

 Totty,
 
 413 So.2d at 686, citing
 
 Harris v. Traders & General Ins. Co.,
 
 200 La. 445, 8 So.2d 289, 293 (1942).
 

 The claimant contends the filing of the workers’ compensation claims against TeamWorks in Maryland on March 20, 2006 and in Louisiana on November 16, 2006, as well as the tort suit in Louisiana on November 17, 2006, interrupted prescription.
 

 With respect to the Maryland claim, Caro was added to the claim in June 26, 2006, and Caro was one of the original defendants in the November 17, 2006 Louisiana tort suit. Both those dates are within the prescriptive period of one year from November 19, 2005.
 

 Although the Maryland claim later was dismissed on the basis of improper venue and lack of jurisdiction, it is uncontested that the Maryland claim was still pending at the time the Louisiana workers’ compensation claim was filed on November 16, 2006. Although Caro was not added to the Louisiana claim until June 18, 2007 — past the one-year time bar — the claimant asserts it was nonetheless timely because the Maryland claim interrupted prescription and the interruption continued until the Maryland claim was dismissed. At that point prescription began to run anew pursuant to La. C.C. art. 3466.
 

 Even without having a precise date for the dismissal of the Maryland claim, the claimant asserts the new prescriptive period would have begun running at earliest on November 17, 2006, the documented date of the last notification to Caro of a hearing in the Maryland case, giving the claimant at least until November 17, |⅞12007 to file his Louisiana claim. As such, the addition of Caro to the Louisiana claim on June 18, 2007 was within the renewed prescriptive period.
 

 The claimant also asserts the purposes set out in
 
 Harris
 
 and
 
 Totty, supra,
 
 are clearly met, because Caro knew from an early date that the claimant was asserting a legal claim for workers’ compensation benefits against Caro; Caro had ample opportunity to conduct investigations and amass evidence; Caro knew, both from the Maryland claim and from the Louisiana tort suit in which it was a defendant, that the claimant was pursuing a legal claim against it.
 

 With respect to the tort suit, the claimant points out the suit was filed on November 16, 2006, within one year of the date of his accident, and it named both Team-Works and Caro among the defendants. Some of the defendants have been dismissed, including TeamWorks and Caro, but the suit is still pending as to other defendants.
 

 The interruption of prescription against one solidary obligor is effective against all solidary obligors. La. C.C. art. 1799. When prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors. La. C.C. art. 3503.
 

 
 *995
 
 A timely-filed tort suit filed in a court of competent jurisdiction and venue interrupts prescription as to a workers’ compensation claim where the defendant and the tortfeasor are solidary obligors.
 
 Bradley v. Mike Rougee Corp.,
 
 95-967, p. 5 (La.App. 5 Cir. 6/25/96), 676 So.2d 1111, 1114,
 
 writ denied,
 
 96-1915 (La.11/1/96), 681 So.2d 1262.
 

 Solidary obligors are obliged to the same thing, so that each may be compelled for the whole, and when payment by one exonerates the other toward the creditor.
 
 Bradley,
 
 95-967 at pp. 3-4, 676 So.2d at 1113. Obligations can be solidary even though they arise from separate acts or by different reasons.
 
 Id.
 
 In a | ^workers’ compensation claim, some elements of compensation damages are the same as those that may be recovered in tort damages,
 
 i.e.,
 
 lost wages and medical expenses.
 
 See
 
 LSA-R.S. 23:1202-1203. Where workers’ compensation benefits and recovery in the tort action overlap, the defendant and the tortfeasor are obligated to the same thing even though the obligations arise from different sources.
 
 Id.
 

 Further, the employer and tortfeasor share a common liability that is not subject to a plea of division.
 
 Id.
 
 Finally, payment of one solidary obligor would exonerate the other obligors as to the creditor.
 
 Id.
 
 The injured employee is not allowed to obtain double recovery on the elements of damage, which are coextensive, where the employer intervenes in the tort action for subrogation and offset for any workers’ compensation payments it must make to the claimant.
 
 Bradley,
 
 95-967 at pp. 3-5, 676 So.2d at 1113-14, citing
 
 Williams v. Sewerage & Water Bd. of New Orleans,
 
 611 So.2d 1383 (La.1993) and
 
 Hoefly v. Gov’t Employees Ins. Co.,
 
 418 So.2d 575 (La.1982).
 

 La. C.C.P. art. 1153 permits amendment despite technical prescriptive bars where the original pleading gives fair notice of the general fact situation out of which the amended claim or defense arises.
 
 Baker v. Payne and Keller of Louisiana, Inc.,
 
 390 So.2d 1272, 1275 (La.1980).
 

 The claimant asserts that TeamWorks was a co-employer of the claimant and, hence, the addition of Caro past the prescriptive date is immaterial because the connexity between the claims and the defendants makes the addition of Caro relate back to the original filing date. The claimant concedes that “the tort suit appears not to have been filed in a court of competent jurisdiction and venue.”
 
 [8]
 
 He argues, however, that the filing of the tort suit, which named Caro as a | ¡^defendant, “made it abundantly clear to Caro” that the claimant was seeking a legal remedy against Caro, thus giving the defendant timely notice of its potential liability, of its need to gather evidence at a timely point, and that it should not presume the claim had been waived, pursuant to the requirements set out in
 
 Harris
 
 and
 
 Totty, supra.
 

 Reviewing all these factors and circumstances, we conclude the trial court was clearly wrong and erred as a matter of law in finding the claim against Caro prescribed.
 

 3. Dismissal of TeamWorks
 

 The effect of the dismissal of TeamWorks was to eliminate the party with whom Caro was solidarily liable, thus preventing the late addition of Caro to the Louisiana workers’ compensation claim
 
 *996
 
 from relating back to the original filing date. Pursuant to La. C.C. art. 3463, the dismissal placed the claimant in the position as if his claim had never been filed against TeamWorks and, hence, the addition of Caro beyond the one-year mark was clearly outside the prescriptive period.
 

 The claimant asserts the trial court erred in dismissing TeamWorks pursuant to the claimant’s Motion to Dismiss Team-Works, when the claimant had already withdrawn the motion and the court had already denied the motion.
 

 The defendants contend the claimant never withdrew his motion but, rather, it was simply in abeyance after the judge rescinded her order that granted it, until she re-granted it after trial on the merits.
 

 In fact, the transcript shows that the court stated, “Let the record reflect that the Court had rendered a decision with reference to the Motion to Dismiss before the Court was aware there was an issue as to the Exception of Prescription ...
 
 and 124the claimant did indicate that he did not want parties dismissed from this case.”
 
 (Emphasis added.)
 

 The judgment was rendered some eight months after the first day of trial, on which these events occurred. The reasons for judgment were issued ten months after the first day of trial. We can only conclude that the judge’s recollection of that part of the preliminaries was fading. We find the court erred in granting the Motion to Dismiss TeamWorks when the claimant had withdrawn it on the first day of trial.
 

 Due to the dismissal of TeamWorks and Caro on the Motion to Dismiss and the Exception of Prescription, the court never considered the merits of the claimant’s case for indemnity benefits. Accordingly, on remand the court is ordered to address the evidence concerning the claimant’s injuries and disabilities, and rule thereon.
 

 DECREE
 

 For the foregoing reasons, the judgment is reversed. The case is remanded for further proceedings consistent with this opinion, including payment of medical expenses and assessment of penalties and attorney’s fees against Caro, and for evaluation of the plaintiffs injury status for award of indemnity benefits. Costs are assessed against the defendants-appellees.
 

 REVERSED AND REMANDED
 

 [1]
 

 . On the original LDOL-WC-1008 form the employer was designated as "Teamwork Staffing Service/TSS of Maryland,” but the claim was later amended to change that name to "TeamWorks USA, Inc.” The name "Teamworks” has been used throughout the pleadings to designate that defendant. The insurer was originally designated as "Zurich American Insurance Company," but that was later amended to "Travelers Indemnity Company.”
 

 [2]
 

 . The defendant now appearing as "PFG-Caro Foods” has been called a variety of names in this suit and in related litigation: "Performance Food Group”; "Caro Foods, Inc.”; "Caro, Inc./PFG, Inc.”; "PFG-Caro Foods.” In its brief to this Court, PFG-Caro Foods advises that it has merged with another company and is now registered with the Louisiana Secretary of State as "Vistar Corporation.” For consistency, we use simply "Caro,” except in direct quotations of documents where another form of the name may appear.
 

 [3]
 

 . In support of its motion for summary judgment, TeamWorks alleged as follows: It is a Maryland-based company that matches eligible employees with potential employers across the United States. It is not in the food distribution business nor is it in the business of training and/or employing CDL drivers in the State of Louisiana. TeamWorks entered into an agreement with Caro to locate licensed CDL drivers for Caro. The agreement lasted from October 21, 2005 through November 20, 2005. Under this agreement, Caro assumed all responsibility for payroll, benefits, insurance, per diem and travel expenses of the personnel TeamWorks located and referred to Caro. The contract called for Team-Works to be paid finder's fees for their services. TeamWorks referred Martin Manning to Caro pursuant to the professional service agreement. Based on these facts, Team-Works asserted it was not Manning’s employer at the time of this accident, and pursuant to the terms of the Service Agreement, Caro had the sole responsibility to provide worker’s compensation benefits to the claimant.
 

 [4]
 

 .TeamWorks’ insurer, Travelers Indemnity Company, filed a motion for summary judgment that adopted and incorporated by reference TeamWorks' motion for summary judgment, asserting that as insurer for Team-Works, Travelers cannot be liable if Team-Works is not liable. Subsequently, however, it was determined that the Travelers insurance policy itself did not provide coverage within the State of Louisiana. Based on that provision, counsel for the other parties withdrew opposition to dismissal of Travelers and the court granted Travelers' motion for summary judgment.
 

 [5]
 

 . Poulson’s and Herman’s testimony was through deposition.
 

 [6]
 

 . Manning v. Popeyes, Inc.,
 
 No. 638-925, 24th Judicial District Court, Parish of Jefferson, State of Louisiana.
 

 [7]
 

 . "IX. Further answering, defendant pleads the exclusivity provisions of the La. Workers’ Compensation statute which acts as a bar to this lawsuit.” Answer by Teamworks, Inc. in
 
 Manning v. Popeye’s, Inc.,
 
 No. 638-925, 24th Judicial District Court, Parish of Jefferson, State of Louisiana.
 

 [8]
 

 . The location of the restaurant where the claimant fell was in Belle Chasse, which is in Plaquemines Parish, not in Jefferson Parish.