# IN THE SUPREME COURT OF IOWA

No. 11–1967

Filed January 25, 2013

**IN THE MATTER OF TRUST #T-1 OF MARY FAYE TRIMBLE,**

**JUDITH R. CUNNINGHAM,** Trustee,

Appellant.

---

Appeal from the Iowa District Court for Cherokee County, Patrick M. Carr, Judge.

Trustee appeals probate court rulings compelling her to provide an accounting to a beneficiary for a period the settlor was alive and the trust revocable and requiring her to personally pay legal fees. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

Kyle S. Irvin of Corbett, Anderson, Corbett, Vellinga & Irvin, L.L.P., Sioux City, for appellant Judith R. Cunningham.

Richard A. Cook of Herrick, Ary, Cook, Cook, Cook & Cook, Cherokee, for appellee Marylynn Miller.

Margaret D. Van Houten and Jodie C. McDougal of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, and J. Michael Deege of Wilson, Deege, Dollar, Despotovich & Riemenschneider, West Des Moines, for amicus curiae, Iowa Trust Association.

**WATERMAN, Justice.**

In this appeal, we review probate court orders compelling trustee Judith R. Cunningham to personally pay $54,120 in attorney fees and costs incurred litigating whether her sister, Marylynn Miller, a beneficiary, was entitled to an accounting for the period their aunt, settlor Mary Faye Trimble, was alive and the trust revocable. We also review the ruling compelling that accounting. This appeal provides an opportunity to address the criteria for allocating attorney fees under Iowa Code section 633A.4507 (2009)[1] and to decide the accounting issue—a question of first impression under our trust code.

We hold the accounting issue is governed by section 633A.3103, under which the settlor alone is entitled to an accounting for the period the trust is revocable, even if the beneficiary's request for the accounting is made after the trust becomes irrevocable. Accordingly, we reverse the probate court ruling that Cunningham had a duty to account to Miller for the period preceding their aunt's death. Cunningham's interpretation of that statute was reasonable and, as we decide today, correct. There is no evidence Cunningham was guilty of malfeasance, fraud, or abuse. For the reasons explained below, we reverse the order requiring her to personally pay the fees and costs incurred litigating that issue. We remand the case for an order directing the trust to pay Cunningham's fees and costs (including her appellate fees) and the fees of the temporary administrator, with Miller to bear her own fees.

**I. Background Facts and Proceedings.**

Mary Faye Trimble died in Cherokee, Iowa, on December 16, 2009, at the age of 104. Trimble's husband had predeceased her, and they had

---

[1]All further references are to the 2009 Code unless otherwise indicated.

no children; however, she was survived by family on both her and her husband's sides, including several nieces and nephews. This case involves a revocable trust created by Trimble on September 29, 1999. From that date until eight months before her death, Trimble acted as trustee and was the sole beneficiary of the trust. The trust expressly provided that Trimble during her lifetime was "exclusively entitled to all income accruing from the Trust Property. No beneficiary named herein shall have any claim upon any such Trust Income or profits." Trimble amended the trust on several occasions to add beneficiaries and modify the percentages allocated to them and to change the successor trustee.

Trimble's final amendment to the trust, on April 8, 2009, substituted Cunningham in the position of trustee. Cunningham had already been designated to succeed Trimble as trustee at her death. Although Trimble was still managing the trust's assets at that time, she executed the amendment recognizing that she may need assistance with that task in the future. Trimble continued to receive the trust bank account statements and write checks from the trust after the substitution until the end of June when she moved to an assisted living facility. Trimble's health continued to decline, eventually requiring her to move into a nursing home. During the time Cunningham was acting as trustee, she made verbal reports to Trimble on the status of the trust and regularly consulted with Trimble regarding investment decisions. No provision of the trust required an accounting or reports to beneficiaries while Trimble was alive. As of the date of Trimble's death, the trust had eighteen beneficiaries, including Miller and Cunningham.

On February 8, 2010, Miller sent a letter to Cunningham stating: "As a trust beneficiary of the Mary Faye Trimble Trust #T-1, I kindly request annual accounts of the trust property, liabilities, receipts, and

disbursements from its inception to the present." Cunningham agreed to account to the beneficiaries for the time period beginning after Trimble's death, but declined to do so for the period when Trimble was still alive and the trust revocable. Miller later limited her request to an accounting for the period beginning when Cunningham was substituted as trustee, April 8, 2009, until the present. Cunningham again declined to provide an accounting for any time when Trimble was still alive.

Miller petitioned the court to intervene in the internal affairs of the trust on May 12. In her petition, Miller asked the court to order Cunningham, who was both the trustee and named executor of Trimble's estate, "to account for the condition and activities of the Trust since her appointment on April 8, 2009, or such earlier date as the Court may direct." Miller also requested the court to order Cunningham to reimburse her for her attorney fees incurred in the suit, pursuant to Iowa Code section 633A.4507. Cunningham filed her answer to Miller's petition on May 17. The answer alleged that, under section 633A.3103,

> Trimble retained her competency and retained the power to revoke the Trust in its entirety . . . and therefore . . . no remainder beneficiaries . . . have the right to compel an accounting for the period from April 8, 2009 to December 16, 2009 because the Trustee had no duty to account to anyone other than Mary Faye Trimble for that period.

Fourteen of the sixteen nonparty beneficiaries joined Cunningham's answer resisting Miller's request for an accounting. None joined Miller's request for an accounting.

On July 8, Miller served a request for production on Cunningham seeking:

> A complete copy of each Trust accounting prepared by Judy R. Cunningham as trustee of the above named Trust, together with copies of all financial records, account statements, ledgers, notes, and records of any kind from

which information used in the preparation of such Trust accounting(s) was obtained, from and after April 8, 2009. In the event no such accounting has yet been prepared, this request extends to include all documents from which an accounting of the condition and activities of the above named Trust will be prepared, from and after the period beginning April 8, 2009.

Cunningham objected to this discovery request, as well as two others. Miller filed a motion to compel on September 2. Cunningham filed a resistance. In her motion, Miller suggested for the first time that Trimble may have been incompetent during this time period and that Cunningham knew that she was incompetent; however, Miller acknowledged that "this motion is not the proper time to decide the issue of Mary Faye Trimble's competence." The probate court granted Miller's motion to compel on October 13.

In its ruling, the probate court determined Miller had the right to request the accounting for this time period pursuant to Iowa Code section 633.4213 (2001) and, for that reason, enforced Miller's discovery request. The court determined section 633.4213 (2001) controlled and that section 633A.3103 (2009) did not apply because, "[a]t the time of [Miller's] request, the Trust was irrevocable." Essentially, the probate court ruled that a beneficiary could request an accounting for a period during which the trust was revocable so long as the request was made after the trust became irrevocable. The probate court made no determination regarding Trimble's competency in its ruling.

In a separate action, at Miller's request, John Wibe was appointed as the temporary administrator of Trimble's estate to seek an accounting for the period preceding Trimble's death. Wibe joined Miller's request for an accounting and also requested copies of the documents the court ordered Cunningham to produce. In response, Cunningham produced to Wibe bank records in the same format as had been provided Trimble and

sought to prevent the trust beneficiaries from gaining access to the information she provided to Wibe while she sought an interlocutory appeal from the October 13 decision. We denied Cunningham's application for interlocutory appeal.

Cunningham filed her first report on December 28. The report included an accounting of the trust's activity from December 16, 2009, to November 30, 2010. Accompanying the report was "a copy of the bank statements together with a brief statement concerning the disbursements from April 2009 through December 16, 2009." In the statement, Cunningham asserted for the first time that she did not act as the sole trustee during this time period, but rather that she acted as Trimble's cotrustee. Miller objected to Cunningham's report on January 13, 2011, on the basis that it failed to comply with the court's October 13, 2010 ruling. Cunningham supplemented her report on January 31.

Following a status conference held on May 13, the probate court ordered the parties to "file briefs directed to the trustee's duty to account and the time period during which the trustee must account." Both parties filed briefs on the issue. Cunningham filed a partial motion for summary judgment, which Miller resisted. The probate court denied Cunningham's motion on July 1, noting factual disputes, including whether Trimble was competent during the period Cunningham was acting as trustee and whether Cunningham was acting as the sole trustee during the relevant time period.[2] The probate court again concluded that section 633.4213 (2001) permits beneficiaries, such as Miller, to request an accounting after the settlor's death for the predeath

---

[2]Miller's counsel confirmed at oral argument to our court that Trimble's competency is not at issue in this appeal.

period notwithstanding section 633A.3103 (2009), which the court construed to limit the trustee's duty to respond to requests made while the trust is revocable. The probate court also stated, "any disputed facts . . . regarding Trimble's competency . . . do not affect this ruling." The probate court ordered Cunningham to "file her final report and accounting, in conformity with this Court's prior and current orders, on or before July 30, 2011."

Cunningham responded by filing her final report on July 28. Miller objected, perceiving deficiencies. Cunningham supplemented her final report twice before the probate court's August 25 hearing on the final report. Ultimately, as noted by the probate court, there were "no substantial objections to the accounting rendered by Ms. Cunningham." The only disputed issues involved the disposition of some jewelry worth about $1000, the interpretation of an *in terrorem* clause, and the allocation of the attorneys' fees and costs for the trustee, Miller, and Wibe. Only the last of these issues is relevant to the present appeal.

Cunningham and Miller testified. The probate court also heard testimony from Cunningham's expert witness, Marilyn Hagberg, a vice president and trust officer at Security National Bank in Sioux City, Iowa. Hagberg testified that it is the bank's policy to refuse to provide a beneficiary with an accounting for a time period during which the trust was revocable, even if the request were made after the settlor's death, unless a court ordered the accounting. She further testified that the bank trust officers would refuse the request because they "owe a duty of privacy to the grantor while they were competent and alive."

The probate court entered an order on November 18 allocating the various attorney fees and costs incurred during the course of the proceeding. As of that time, Cunningham, in her capacity as trustee,

had incurred attorney fees totaling $58,619.50 and costs totaling $5015.52. Miller had attorney fees of $16,271.68, and Wibe's fees totaled $3018.75.

The probate court's ruling focused on section 633A.4507, which authorizes "the court, as justice and equity may require, [to] award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." The probate court ordered Cunningham to personally pay the attorney fees of Miller and Wibe, in addition to absorbing a majority of the attorney fees and costs she incurred defending against the action brought by Miller. In allocating Cunningham's own fees, the probate court ordered Cunningham to personally pay all of the fees and costs the probate court attributed to her refusal to account, an amount the court calculated at $34,830.55. The court ordered the remainder of the fees, $28,804.47, to be paid by the trust.

The probate court's order thus held Cunningham personally responsible for attorney fees and costs totaling $54,120.98, while at the same time acknowledging that "Ms. Cunningham's position, that she was not required to account, was at least debatable." The probate court concluded "justice and equity" do not require the beneficiaries or Miller, personally, to bear the expenses because "the question was one which a prudent trustee should not have debated at all, and certainly not at the expense of the trust beneficiaries." The probate court, in allocating fees, did not rely on any allegation Cunningham mismanaged the trust or misappropriated any trust property. The probate court noted Miller had no objection to Cunningham's accounting once it was finally provided.

Cunningham appealed the probate court's decisions regarding the proper scope of the trustee's duty and the allocation of the attorney fees and costs. We retained the appeal.

## II. Standard of Review.

Proceedings concerning the internal affairs of a trust, including proceedings to compel the trustee to account to the beneficiaries are tried in equity. *See* Iowa Code § 633A.6101 (giving probate court subject matter jurisdiction over "proceedings concerning the internal affairs of a trust"); *id.* § 633.33 (establishing whether a probate proceeding is tried in equity or as a law action). Our review of cases tried in equity is de novo. *In re Estate of Myers*, 825 N.W.2d 1, 3 (Iowa 2012). When reviewing factual findings, particularly on the credibility of witnesses, we give weight to the probate court's findings, but we are not bound by them. *In re Estate of Roethler*, 801 N.W.2d 833, 837 (Iowa 2011). We review the probate court's interpretation of statutory provisions for correction of errors of law. *In re Estate of Myers*, 825 N.W.2d at 3–4.

Our review of an attorney-fee award is for abuse of discretion. *See In re Estate of Bockwoldt*, 814 N.W.2d 215, 221–22 (Iowa 2012); *see also In re Thompson Trust*, 801 N.W.2d 23, 25 (Iowa Ct. App. 2011). A court abuses its discretion when its ruling is based on grounds that are unreasonable or untenable. *Johnson v. Des Moines Metro. Wastewater Reclamation Auth.*, 814 N.W.2d 240, 244 (Iowa 2012). The grounds for a ruling are unreasonable or untenable when they are " 'based on an erroneous application of the law.' " *Id.* (quoting *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000)).

**III. Did the Probate Court Err in Ordering the Trustee To Account to a Beneficiary for a Period During Which the Trust Was Revocable?**

**A. Mootness.** We must first consider Miller's claim that Cunningham's appeal of the accounting issue is moot because the accounting has already been provided. A claim may be rendered moot if there is a change in the facts or governing law after the action is commenced. *Baker v. City of Iowa City*, 750 N.W.2d 93, 97 (Iowa 2008). " 'A case is moot if it no longer presents a justiciable controversy because the issues involved are academic or nonexistent.' " *Id.* (quoting *Perkins v. Bd. of Supervisors*, 636 N.W.2d 58, 64 (Iowa 2001)). An opinion involves merely academic issues if discussing the issues would have no effect on the underlying dispute. *Id.*

We conclude resolution of the accounting issue is not merely of academic interest because it is inextricably intertwined with the proper allocation of attorney fees. Cunningham has appealed the probate court's ruling on the allocation of the fees. Whether the probate court erred by ordering her to pay the fees personally depends in part on whether Cunningham should have been the prevailing party on the accounting issue. *See Atwood v. Atwood*, 25 P.3d 936, 947 (Okla. Civ. App. 2001) (listing the "result obtained by the litigation and prevailing party concepts" as factors the court should consider when determining whether justice and equity require a party to pay the fees and costs incurred in a judicial proceeding involving the administration of a trust). Accordingly, we hold the accounting issue is not moot.

**B. The Accounting Issue.** We next address whether the probate court erred in ruling Cunningham owed Miller an accounting for the period Trimble was alive and the trust revocable. This is a question of interpretation of the trust code and specifically the interplay between

Iowa Code section 633.4213 (2001), which generally provides beneficiaries with a right to an accounting, and section 633A.3103 (2009), which specifically provides that the trustee's duties are owed to the settlor alone while she is alive, competent, and the trust is revocable.

Our goal in interpreting a statute is to give effect to the legislature's intent. *Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 811 (Iowa 2011). We read interrelated statutes together in a manner that harmonizes them if possible. *Id.* If the statute is plain and the meaning unambiguous, we do not resort to the principles of statutory construction to determine the legislature's intent. *In re Estate of Bockwoldt*, 814 N.W.2d at 223. A statute is ambiguous if reasonable persons can disagree on the statute's meaning. *Id.* We now turn to the operative statutory language.

The Iowa Trust Code contains six subchapters. The focus of this case is on the relationship between two of those subchapters, which contain provisions governing revocable trusts and general provisions controlling trust administration. *See* Iowa Code §§ 633A.3101–.3112 (setting forth the provisions governing revocable trusts); *id.* §§ 633A.4101–.4707 (setting forth the provisions governing general trust administration). Section 633A.3103 sets forth the rights of the settlor of a revocable trust and states in part:

> Except to the extent the terms of the trust otherwise provide, *while a trust is revocable*, all of the following apply unless the trustee actually knows the individual holding the power to revoke the trust is not competent:
>
> 1. The holder of the power, and not the beneficiary, has the rights afforded beneficiaries.
>
> 2. The duties of the trustee are owed to the holder of the power.

*Id.* § 633A.3103 (emphasis added).[3] Trimble, as the settlor, is the "holder of the power" under section 633A.3103.

A trustee, as a fiduciary, owes the trust's beneficiaries several duties. One of the duties a trustee owes to the beneficiaries is the duty to account under section 633.4213(5) (2001).[4] This section states:

> A trustee shall prepare and send to the beneficiaries an account of the trust property, liabilities, receipts, and disbursements at least annually, at the termination of the trust, and upon a change of a trustee. An accounting on behalf of a former trustee shall be prepared by the former trustee, or if the trustee's appointment terminated by reason of death or incapacity, by the former trustee's personal representative or guardian or conservator.

*Id.* § 633.4213(5) (2001). The trustee must provide the accounting to "[t]he beneficiaries [entitled to vote as] defined in section 633.4105 [and] [e]ach beneficiary who has delivered to the trustee or other fiduciary a

---

[3]By its terms, section 633A.3103 is inapplicable if the trustee actually knows the settlor is incompetent. "Exactly when a trust settlor 'loses capacity' to revoke a revocable trust, *absent a judicial determination of incapacity*, is an issue that would seem to be exceedingly problematic." Ronald R. Volkmer, *Duty Owed by Trustee of Revocable Trust*, 39 Est. Plan. 46, 46 (2012); *see also* Unif. Trust Code § 603 cmt. (amended 2004), 7C U.L.A. 554 (2006) ("[B]ecause determining when a settlor is incapacitated is not always clear, concern has been expressed that it will often be difficult in a particular case to determine whether the settlor has become incapacitated and the settlor's control of the beneficiary's rights have ceased."). Miller argued in probate court that Cunningham may have been aware that Trimble was incompetent in the months preceding her death; however, the court never decided this issue, and there was never any formal adjudication of Trimble's competence. Neither party raised Trimble's competency as an issue in this appeal.

[4]As a general proposition, Iowa's "trust code applies to all trusts within the scope of this trust code, regardless of whether the trust was created before, on, or after July 1, 2000, except as otherwise stated in [the] trust code." Iowa Code § 633A.1106(1) (2009). One such exception appears in section 633A.4213. This section, originally section 633.4213, was amended in 2002 and later transferred to section 633A.4213 in 2005. *See* 2002 Iowa Acts ch. 1107, § 12; 2005 Iowa Acts ch. 38, § 54. The 2002 amendment included a provision that limits the applicability of the section, as amended, to trusts created after July 1, 2002. *See* 2002 Iowa Acts ch. 1107, § 12; *see also* Iowa Code § 633A.4213(7). Accordingly, because Trimble created her trust in September 1999, the pre-2002 version of section 633A.4213, section 633.4213 (2001), is applicable.

written request for a copy of the account or other information." *Id.* § 633.4213(6) (2001). Section 633.4105 defines beneficiaries who are entitled to vote as "those who are currently entitled or eligible to receive trust income or a distribution of principal if the trust were to terminate at the time of the vote." *Id.* § 633.4105(3) (2001).

While the trust is revocable and the settlor alive and competent, however, the trustee owes her duties, including the duty to account, to the settlor exclusively instead of to the beneficiaries. *Id.* § 633A.3103(2) (2009); *id.* § 633.4213 (2001); *see also Hoelscher v. Sandage,* 462 N.W.2d 289, 294 (Iowa Ct. App. 1990) (holding beneficiaries of a revocable trust did not have standing to challenge the actions of a cotrustee while the trust was still revocable because the beneficiaries lacked sufficient "interests in the trust property to attack the co-trustees' actions in connection with the trust property"); *In re Trust of Willcockson,* 368 N.W.2d 198, 203 (Iowa Ct. App. 1985) (holding beneficiary whose interest was contingent upon her mother failing to exercise a general power of appointment lacked standing to challenge the termination of the trust); Martin D. Begleiter, *In the Code We Trust—Some Trust Law for Iowa at Last,* 49 Drake L. Rev. 165, 217 (2001) (explaining that section 633.3103(2) "covers all the trustee duties provided in the Iowa Trust Code including the duty to provide notices [under section 633.4213]"). Thus, it is clear if Miller had requested the accounting while Trimble was alive and competent, and the trust was revocable, Cunningham could have refused to provide Miller with an accounting at that time.

Less clear is whether, upon Trimble's death, Miller as a beneficiary became entitled to an accounting for the period preceding the death. That is the fighting issue. We consider to whom the trustee must account for the period beginning with the trustee's last accounting to the

settlor and ending with the settlor's death. Every revocable trust will have this so-called "gap period," unless the settlor acted as trustee until death (because the settlor presumably accounted to herself) or unless the settlor died immediately after receiving the trustee's last accounting, thus leaving no gap period.

The parties present two conflicting interpretations. Miller's interpretation is that the trustee should account to the beneficiaries for this period because, once the settlor dies and the trust is irrevocable, section 633A.3101 becomes inoperative and the beneficiaries succeed to the settlor's interest in the trust. *See Siegel v. Novak*, 920 So. 2d 89, 95–96 (Fla. Dist. Ct. App. 2006) (permitting beneficiaries of a previously revocable trust to object to the trustee's accounting for a period during which the trust was revocable because they have "an interest in the corpus of the trust after the death of [the settlor]" and because "[w]ithout this remedy, wrongdoing concealed from a settlor during her lifetime would be rewarded"); *Siegel v. JP Morgan Chase Bank*, 71 So. 3d 935, 940 (Fla. Dist. Ct. App. 2011) (reaffirming the holding in *Siegel v. Novak* and stating, "Our opinion in *Siegel [v. Novak]* determined that the [beneficiaries] *did* have standing to challenge the trustee's actions, because they had a direct interest in the corpus of the trust after [the settlor's] death"); *see also In re Estate of Giraldin*, 290 P.3d 199, 207, 210 (Cal. 2012) (holding that after settlor's death remainder beneficiaries have standing to sue trustee for breach of duty to settlor occurring while the trust was revocable "to the extent that violation harmed the beneficiaries' interests").

Under the competing interpretation urged by Cunningham and amicus curiae, Iowa Trust Association (ITA), the beneficiary is not entitled to an accounting for the period during which the settlor was alive

and the trust was revocable, even if the accounting is requested after the settlor's death. *See In re Stephen M. Gunther Revocable Living Trust*, 350 S.W.3d 44, 44 (Mo. Ct. App. 2011) ("Because the trustee owed no duty to the beneficiaries prior to the settlor's death, they are not entitled to an accounting of trust transactions prior to that date."); *see also Boyd v. Boyd*, 57 So. 3d 1169, 1177 (La. Ct. App. 2011) (holding trustee had no duty to account to a beneficiary for a period during which the trust was revocable, but that the beneficiary had "a right to reasonably request complete and accurate *information* as to the nature and amount of the trust property . . . without regard for the revocability of those trusts").

Iowa Code section 633A.3103 ambiguously provides "*while* a trust is revocable . . . [t]he duties of the trustee are owed to the [settlor]" without stating whether a beneficiary can obtain an accounting for that period once the settlor's death renders the trust irrevocable. In other words, does the temporal word "while" define the time period that can be covered by a request for an accounting, or does it only limit when the request can be made? Because there are two reasonable ways to read the operative statutory language, we turn to the canons of statutory construction. When the court is interpreting an ambiguous statute, it may consider a number of factors, including "[t]he object sought to be attained . . . [and] the consequences of a particular construction." Iowa Code § 4.6(1), (5). We consider both factors as we examine the purposes of revocable trusts and the duty to account.

1. *Purposes of a revocable trust.* Although settlors use revocable trusts instead of wills to dispose of their property at death for a variety of reasons, two of these reasons—avoiding probate and protecting privacy— stand out as relevant to our interpretation of whether a beneficiary should be entitled to receive an accounting for a period during which the

trust was revocable. *See generally* Langdon T. Owen, Jr., *Objectives of Revocable Trusts*, 17-SEP Utah B.J. 29 (2004) [hereinafter Owen] (discussing the objectives and purposes of revocable trusts). Settlors often use a revocable trust instead of a will to dispose of their property at death as a way to avoid what they perceive to be the costly and protracted probate process. *See id.* at 29–30; *see also* Alan Newman, *Revocable Trusts and the Law of Wills: An Imperfect Fit*, 43 Real Prop. Tr. & Est. L.J. 523, 531–32 (2008) ("Increasingly, the trend is to treat the remainder beneficiary's interest in a revocable trust as an expectancy during the settlor's lifetime because revocable trusts are used primarily to avoid estate administration and provide for the management of property in the event of the settlor's incapacity without the need for a court-supervised conservatorship.").

Miller's approach increases the burden on trustees by imposing a retroactive duty to account to multiple beneficiaries for the period the trust was revocable. As this case shows, conflicts may arise over the scope and form of the accounting to be provided beneficiaries for the period the trustee's duties were owed exclusively to the settlor. In this case, none of the other beneficiaries joined Miller's demand for a predeath accounting, yet Miller sued over what she saw as shortcomings in the accounting information provided to her by Cunningham for the period Trimble was alive. Such disputes increase the costs of using revocable trusts. By contrast, Cunningham's interpretation avoids the expense and costs of accounting retroactively to multiple parties with potentially conflicting interests. Cunningham's approach better serves the purpose of using revocable trusts to simplify and lower the cost of transferring property outside of probate.

A problem with adopting Cunningham's position is that it leaves a gap between the last accounting and the settlor's death during which no one is monitoring the trustee's actions. Miller's interpretation avoids this problem by requiring the trustee to account to the beneficiaries for this gap period. A potential solution to the problem presented by Cunningham's approach is to require the trustee to account to the personal representative of the settlor's estate. While in some circumstances this will ensure the trustee's accountability, this case highlights a shortcoming with this approach. Cunningham served both as the trustee and as the personal representative of Trimble's estate, and thus, she would be reviewing her own accounting. *See In re Malasky*, 736 N.Y.S.2d 151, 153 (App. Div. 2002) ("A 'circumstance in which the settlor who is the trustee and accountable only to himself is the equivalent of a provision in which the trustee is accountable to no one.' " (quoting *In re Kassover*, 476 N.Y.S.2d 763, 764 (Sur. Ct. 1984))). Miller, therefore, requested the appointment of a temporary administrator to receive Cunningham's accounting. Iowa Code section 633.343 allows the probate court, "for good cause shown, [to] appoint a temporary administrator . . . for the proper administration of the estate." Although the appointment of a temporary administrator increases costs to some extent, it addresses the gap issue. The temporary administrator is owed the same accounting to which the settlor was entitled before her death.

Privacy is another reason settlors use revocable trusts, which allow settlors to have more control over who may gain access to their financial information than do wills. *See* Frances H. Foster, *Trust Privacy*, 93 Cornell L. Rev. 555, 559–66 (2008) [hereinafter Foster] (discussing the privacy advantages attendant with using a revocable trust instead of a will). By using a revocable trust, the settlor can keep her financial affairs

private because administration occurs outside of the public court system. *See* Owen, 17-SEP Utah B.J. at 30. Privacy benefits not only the settlor, but also the beneficiaries:

> Trust privacy can also protect beneficiaries from each other. Settlors, trustees, or even beneficiaries may not want certain beneficiaries to know the names and shares of other beneficiaries for a variety of reasons. In the most typical case, the goal is to preserve harmony among settlors' survivors. As literature and human experience have shown, unequal or inequitable dispositions to family and friends can lead to jealousy, anger, and pitched battles—both emotional and legal. Survivors often view a decedent's last wishes in a will as not only a dispositive scheme but a statement of lifelong love and appreciation—or lack thereof—for those around the decedent.

Foster, 93 Cornell L. Rev. at 576–77 (footnote omitted). The privacy associated with using a revocable trust may also reduce the tension between beneficiaries and trustees because "[b]eneficiaries with little or no knowledge of their rights and interests under a trust are less likely to assert those rights, second-guess trustee decisions, or insist on an active role in trust management." *Id.* at 575.

> Privacy also presents some disadvantages:

> [R]ules that protect the privacy of deceased settlors' trusts may have a perverse effect. Those rules may harm vulnerable settlors and benefit "scheming perpetrators preying on elderly or infirm people . . . utilizing a revocable trust . . . as a vehicle for their misdeeds."

*Id.* at 598 (quoting *In re Estate of Tisdale*, 655 N.Y.S.2d 809, 812 (Sur. Ct. 1997)). Beneficiaries face a similar issue as that faced by the settlor because "[o]nly an informed beneficiary can fulfill this role as monitor and enforcer of trusts." *Id.* at 606. For trustees, "[t]rust privacy . . . can produce a climate of suspicion and conflict where none needs to exist." *Id.* at 598. And, when the trustee is a family member, the costs can be personal. *Id.* at 599. Although these concerns are valid, requiring the

trustee to account to the personal representative of the settlor's estate would alleviate the potential for abuse, while at the same time preserving privacy to avoid family discord.

Limiting accountability to the personal representative of the settlor's estate helps ensure settlors of revocable trusts receive the same level of privacy with regard to predeath transactions that is normally accorded to persons using wills. The privacy concerns at issue in this case are narrowly focused on the privacy of the settlor *before* the settlor's death. During this time period, the trustee owes duties exclusively to the settlor and the settlor has full discretion to do what she wishes with her assets—whether it works to the benefit of the beneficiaries of the trust or not. *See* Iowa Code § 633A.3103 ("[W]hile a trust is revocable . . . [t]he duties of the trustee are owed to the [settlor]."). As a will substitute, a revocable trust should ensure the settlor receives the same level of privacy with regard to predeath transactions as that permitted for testators. *See* Frances H. Foster, *Privacy and the Elusive Quest for Uniformity in the Law of Trusts*, 38 Ariz. St. L.J. 713, 754 (2006) (acknowledging that some "states have concluded that '[b]ecause the devisees under a will have no right to know of the devise no matter how incapacitated the settlor, then neither should the beneficiaries of a revocable trust'" (quoting David M. English, *The Uniform Trust Code (2000): Significant Provisions and Policy Issues*, 67 Mo. L. Rev. 143, 188 (2002))). Ordinarily, a beneficiary under a will is not given an opportunity to examine the financial activities of the decedent prior to his death, even if the testator becomes incapacitated. *See* Unif. Trust Code § 603 cmt. (amended 2004), 7C U.L.A. 554 (2006) ("In the case of a will, the devisees have no right to know of the dispositions made in their favor until the testator's death, whether or not the testator is incapacitated.").

On balance, settlors of a revocable trust should be entitled to the same privacy for predeath transactions as they would if they used a will.

We conclude the settlor's interest in privacy favors a bright-line rule denying beneficiaries the right to an accounting for the period when the trust is revocable.

2. *Duty to account.* We next consider the primary purpose underlying the duty to account. This duty

> deters the trustee from committing a breach of fiduciary duty by giving the beneficiaries access to the information needed to monitor the trustee's performance. The duty also assists the beneficiaries in remedying a fiduciary breach after it has occurred by giving them the information needed to prove the breach.

T.P. Gallanis, *The Trustee's Duty to Inform*, 85 N.C. L. Rev. 1595, 1617 (2007). Implicit in the protective nature of the duty to account is that the beneficiaries will be able to take action against the trustee should they discover the trustee has breached one of its duties. For a revocable trust, however, the trustee's duties of prudence, loyalty, and impartiality are owed solely to the settlor while the settlor is still alive and competent. *See* Iowa Code § 633A.3103(2) (2009); *id.* § 633.4213 (2001). Thus, even if a beneficiary were provided an accounting and discovered some transaction with which she disagreed, the beneficiary may be without standing to challenge that transaction. *Cf. Hoelscher*, 462 N.W.2d at 294 (holding beneficiaries of a revocable trust did not have standing to challenge the actions of a cotrustee while the trust was still revocable); *In re Trust of Willcockson*, 368 N.W.2d at 203 (holding beneficiary whose interest was contingent upon her mother failing to exercise a general power of appointment lacked standing to challenge the termination of the trust). Further, allowing beneficiaries to have an accounting for a time period during which the trustee owed the duty to someone else would

open the door to beneficiary challenges to transactions that were beneficial to the settlor, but that may not have been beneficial to the future beneficiaries. *See, e.g., Hoelscher,* 462 N.W.2d at 294; *In re Trust of Willcockson,* 368 N.W.2d at 203; *Bryant v. Norwest Bank of Iowa, N.A.,* No. 00–1568, 2001 WL 1658906, at *3 (Iowa Ct. App. Dec. 28, 2001) (holding beneficiary of a revocable trust could not enforce a previous version of the trust because his "interest in the trust was too contingent to constitute a legal interest sufficient to establish standing"). Although the settlor and the beneficiaries have convergent interests, their interests also diverge in certain respects. Settlors, especially those who are faced with the high costs of end-of-life care, tend to benefit most from more liquid short-term investments, which often have lower returns. The investment strategy for beneficiaries, on the other hand, may differ substantially.

Nevertheless, a divided California Supreme Court recently held that under California law *both* remainder beneficiaries and the settlor's successor have standing to sue the trustee for breaches of duty owed to the settlor while the trust was revocable. *In re Estate of Giraldin,* 290 P.3d at 203–11. The trustee in that case appealed a trial court judgment against him for breach of fiduciary duty in an action brought by remainder beneficiaries challenging investment decisions made while the settlor was alive. *Id.* at 202–03. Specifically, the trustee, who was a twin son of the settlor, lost nearly $4 million of trust funds invested in his twin brother's business while their settlor–father was still alive, although allegedly incompetent. *Id.* at 201–03. Several remainder beneficiaries, some of the settlor's other children, sued the trustee over that failed investment. *Id.* at 202. The court of appeals reversed the trial court judgment, holding the beneficiaries lacked standing to challenge the

trustee's actions or compel an accounting for the period the settlor was alive. *Id.* at 203. The California Supreme Court granted review to decide the standing issue. *Id.*

The California Supreme Court recognized that the trustee's duties were owed to the settlor while he was alive and that the settlor's death did not "retroactively" impose duties to the beneficiaries. *Id.* at 207. The high court noted the deceased settlor's personal representative or successor had standing to sue the trustee for breaches that occurred while the settlor was alive. *Id.* at 209–10. But, the court's majority went on to hold such standing was not exclusive and that the remainder beneficiaries also could sue to the extent they were harmed by the trustee's breach of duty owed the settlor. *Id.* at 210–11. Two justices dissented, concluding only the deceased settlor's personal representative or successor could sue on the decedent's behalf. *Id.* at 211 (Kennard, J., dissenting). The dissent noted that limiting the right to sue to the settlor's successor

> would avoid the conflict of interest inherent in the majority's approach of also allowing the beneficiaries to sue: The suing beneficiaries generally have a personal interest in maximizing their share of the inheritance. That interest may be at odds with what the decedent had in mind, as this case illustrates.

*Id.* at 212.

We share the dissent's concern over potentially conflicting claims against trustees if both beneficiaries and the deceased settlor's successor are allowed to sue to challenge decisions made while the trust was revocable. In any event, *In re Estate of Giraldin* is distinguishable because in that case the beneficiaries alleged and the trial court found the beneficiaries were damaged by the trustee's breach of duty to the settlor while the trust was revocable. *See id.* at 203. By contrast, Miller

never alleged Cunningham breached her fiduciary duties or harmed the beneficiaries.

Cunningham relies on a case directly on point: *In re Stephen M. Gunther Revocable Living Trust.* In that case, the beneficiaries of a previously revocable trust sought an accounting from the trustee for a period during which the settlor was not the trustee, but while the trust was still revocable. *In re Stephen M. Gunther Revocable Living Trust*, 350 S.W.3d at 45. The court interpreted a statute comparable to Iowa's: " 'While a trust is revocable and the settlor has capacity to revoke the trust, rights of the beneficiaries are subject to the control of, *and the duties of the trustee are owed exclusively to, the settlor.*' " *Id.* at 46 (quoting Mo. Rev. Stat. § 456.6–603.1 (Supp. 2010) (emphasis added)). The court ultimately held that, "[b]ecause the trustee owed no duty to [the] beneficiaries . . . prior to the settlor's death, they are not entitled to an accounting of trust transactions prior to that date." *Id.* at 47. In reaching this conclusion the court relied on an Alabama case, *Ex parte Synovus Trust Co., N.A.*, in which the court found that the beneficiaries of a presently revocable trust did not have standing to sue the trustee for breach of fiduciary duty because,

> regardless of whether the children suffered injury to their rights as trust beneficiaries as a result of the [trustee's] conduct, those rights were subject to control of the settlors . . . while the trusts were revocable, and the [trustee] owed fiduciary duties *exclusively* to the settlors during that time.

*Id.* at 46 (citing *Ex parte Synovus Trust Co., N.A.*, 41 So. 3d 70, 74 (Ala. 2009)). We conclude the same result applies under the Iowa Trust Code.

We hold the interpretation advocated by Cunningham and the ITA is correct. A trustee who owes no accounting to beneficiaries while the

trust is revocable should not face retroactive accounting duties for the same period upon the settlor's death.

**IV. Did the Probate Court Abuse Its Discretion in Requiring Cunningham to Personally Pay the Attorney Fees Incurred in Litigating the Accounting Issue?**

We next address the probate court's order requiring Cunningham to personally pay the attorney fees of Miller and Wibe and a substantial portion of her own attorney fees and costs incurred in defending against Miller's request for an accounting.[5]  The probate court relied on Iowa Code section 633A.4507, which states:

> In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

This case presents our court's first opportunity to provide guidance on fee allocations under this statute.[6]

We note no prior reported Iowa decision has required that a trustee personally pay a beneficiary's attorney fees without a finding the trustee breached fiduciary duties, misused trust assets, or committed fraud or other malfeasance.  ITA argues the probate court's attorney-fee ruling in this case, if affirmed, would "cause many qualified individuals and

---

[5]The probate court approved Cunningham's application for reimbursement of $22,600 from the trust for her fiduciary fees incurred in administering the trust.  Miller does not appeal this order of the court.

[6]Although we have not interpreted this section, our court of appeals has, in two unpublished decisions, relied on prevailing party concepts in applying this statute.  *See Heidecker Farms, Inc. v. Heidecker*, Nos. 09–1541, 10–0273, 2010 WL 3894199, at *13 (Iowa Ct. App. Oct. 6, 2010) ("Upon our review, we cannot characterize Erna as the prevailing party."); *Schade v. Gethmann*, No. 09–0617, 2010 WL 1578634, at *12 (Iowa Ct. App. Apr. 21, 2010) ("In light of our decision that Jack should prevail on the overriding issue in this case . . . we believe an award of attorneys' fees to Patricia is not justified.").

financial institutions to think twice before agreeing to be a trustee/successor trustee for any trust."

We begin our analysis by setting forth factors the probate court should consider in assessing what justice and equity require. We then apply these factors to the fees at issue in this case. For the reasons that follow, we conclude the probate court's decision to hold Cunningham personally responsible for the fees and costs incurred in this litigation was an abuse of discretion.

**A. Criteria for Allocating Attorney's Fees Under Section 633A.4507.** In applying section 633A.4507, the probate court relied on the trustee's duty of prudence to determine whether justice and equity required the trustee to be personally responsible for her own fees, as well as those of the beneficiary. Trustees have a duty to "administer the trust with the reasonable care, skill, and caution as a prudent person would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust." *Id.* § 633A.4203. A trustee has many duties apart from the duty of prudence, however, including the duty to "take reasonable steps to enforce claims of the trust, to defend claims against the trust, and to defend against actions that may result in a loss to the trust." *Id.* § 633A.4211. Miller correctly notes that trustees have a duty to "administer the trust solely in the interest of the beneficiaries." *Id.* § 633A.4202(1). The difficulty here is that for the predeath period at issue, Cunningham owed her duties to the settlor, Trimble, not the beneficiaries. *See id.* § 633A.3103. Although their interests frequently overlap, the settlor and beneficiaries may also have conflicting interests. Accordingly, we do not believe the duty of prudence is the best or only factor the court should consider in determining what is just and equitable under section 633A.4507.

While our court has not yet had the opportunity to interpret the "justice and equity" standard set forth in section 633A.4507, other courts have interpreted similar statutory provisions.[7] *See, e.g., Atwood,* 25 P.3d at 945–47; *In re United Effort Plan Trust,* 289 P.3d 408, 414–16 (Utah 2012); *Garwood v. Garwood,* 233 P.3d 977, 984–88 (Wyo. 2010). The *Atwood* court interpreted an equivalent statute to determine whether the trial court correctly awarded a trustee fees incurred in defending against the beneficiaries' claim that he had acted imprudently in failing to diversify the trust's assets. *Atwood,* 25 P.3d at 940, 945–47 (interpreting Okla. Stat. tit. 60, § 175.57(D) (Supp. 2000)). The *Atwood* court began by clarifying that the "justice and equity" standard encompasses two separate determinations: whether a party is entitled to recover fees and expenses and whether the fees and expenses were reasonable. *Id.* at 947. The parties disagreed whether it was necessary to litigate the accounting issue, but no party otherwise challenges the reasonableness of the hourly rates or time charges incurred in this case. Accordingly, although we retain the discretion to sua sponte reduce attorney fees in an appropriate probate case, we confine our analysis in this case to whether each party is *entitled* to recover fees and costs.

On the question of entitlement, the *Atwood* court stated as follows:

> The highly subjective phrase "justice and equity" does not state specific guidelines or criteria for use by a trial court or for use by a reviewing court. The phrase connotes fairness and invites flexibility in order to arrive at what is fair on a case by case basis. Hence, general criteria drawn from

---

[7]Iowa Code section 633A.4507 and the provisions of the other states are based on section 1004 of the Uniform Trust Code, which contains nearly identical language to that found in section 633A.4507. *See* Martin D. Begleiter, *Son of the Trust Code—The Iowa Trust Code After Ten Years,* 59 Drake L. Rev. 265, 366 (2011) (stating Iowa Code section 633A.4507 was based on Uniform Trust Code section 1004). *Compare* Iowa Code § 633A.4507, *with* Unif. Trust Code § 1004, 7C U.L.A. 649 (2006).

> other types of cases provide nonexclusive guides. These include (a) reasonableness of the parties' claims, contentions, or defenses; (b) unnecessarily prolonging litigation; (c) relative ability to bear the financial burden; (d) result obtained by the litigation and prevailing party concepts; and (e) whether a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons in the bringing or conduct of the litigation.

*Id.* We hereby adopt these criteria in interpreting what justice and equity require under section 633A.4507.

Section 633A.4110 provides the court with other factors to consider when assessing whether a trustee is entitled to seek reimbursement from the trust. This section states:

> A trustee is entitled to be repaid out of the trust property, with interest as appropriate, for all of the following expenditures:
>
> 1. Expenditures that were properly incurred in the administration of the trust.
>
> 2. To the extent that they benefited the trust, expenditures that were not properly incurred in the administration of the trust.

Iowa Code § 633A.4110. In light of this section, we conclude that a court considering whether to require a trust to pay the fees and costs of the trustee under section 633A.4507 should first consider whether the expenditures were properly incurred in the administration of the trust or otherwise benefited the trust. This approach is consistent with that taken by courts of other jurisdictions. *See Garwood*, 233 P.3d at 986 (quoting *Atwood* factors and collecting cases considering whether fees and costs incurred benefited the trust). Miller does not contend section 633A.4110 defeats Cunningham's right to reimbursement, so we move on to consider section 633A.4507.

**B. Application of the Section 633A.4507 Factors.** The probate court ordered Cunningham to personally pay a substantial portion of her own fees and costs, as well as those of Miller and Wibe, because "the

question [of whether she was required to account] was one which a prudent trustee should not have debated at all, and certainly not at the expense of the trust beneficiaries." The probate court abused its discretion by applying the wrong legal standard.

We will now use the *Atwood* factors in applying section 633A.4507 to allocate the attorney fees. The first factor is the "reasonableness of the parties' claims, contentions, or defenses." The probate court itself acknowledged that Cunningham's position "was at least debatable." Because Cunningham ultimately prevailed on the accounting issue, we find her position was reasonable. Further, because she won the accounting issue on appeal, the fourth factor, which considers the "result obtained by the litigation and prevailing party concepts," similarly weighs against requiring Cunningham to be personally responsible for the attorney fees she incurred defending against Miller's request for an accounting.

The next factor we examine is whether Cunningham unnecessarily prolonged the litigation with Miller. This case is not *Bleak House*,[8] but Cunningham could have avoided much court time and expense to all parties had she simply provided her sister the accounting when requested initially. As the probate court observed, "When finally rendered, the accounting for the questioned period proved simple, uncomplicated and straightforward." Yet, Cunningham was within her rights to withhold the accounting for the period the trust was revocable, and the accounting ultimately showed no malfeasance.

---

[8]In the book *Bleak House*, author Charles Dickens tells the story of the protracted and costly litigation surrounding a testator's estate. *See* Charles Dickens, *Bleak House* (1853).

The probate court first ruled that Cunningham must provide the requested accounting when it granted Miller's motion to compel discovery. Miller's discovery request asked for either a copy of the accounting prepared by Cunningham *or,* "[i]n the event no such accounting has yet been prepared, . . . all documents from which an accounting of the condition and activities of the above named Trust will be prepared." In response to this discovery request and the court's ruling granting Miller's motion to compel, Cunningham provided Miller with copies of the documents from which the accounting would be prepared. At the time of the request, Cunningham had not yet prepared an accounting for the requested time period, thus, in lieu of the accounting, Cunningham provided the underlying documents.

The probate court ordered Cunningham to prepare the accounting in its July 11, 2011 ruling. Cunningham prepared the accounting and filed it within the court's deadline. Cunningham should have more quickly provided the accounting to Wibe, as temporary administrator, but we do not believe her failure to do so unnecessarily prolonged the litigation to an extent that warrants requiring her to personally pay attorney fees.

We next consider Cunningham's relative ability to bear the financial burden. Cunningham was sued in her capacity as trustee. As a trustee, Cunningham has numerous duties as a fiduciary for the trust, but she does not act as a guarantor for the trust. We give little weight to this factor in the absence of a breach of a fiduciary duty. Accordingly, because we conclude Cunningham did not breach her duties, we do not consider her relative ability to bear the financial burden.

The final factor we consider in determining whether justice and equity require the trustee to personally bear the costs of litigation is

"whether [the trustee] has acted in bad faith, vexatiously, wantonly, or for oppressive reasons in the bringing or conduct of the litigation." On this point the probate court found: "It is more likely than not that Ms. Cunningham's refusal to account was . . . grounded on pre-existing animosity with her sister, Ms. Miller." The probate court stated:

> There was some evidence of a pre-existing estrangement and discord between Ms. Miller and Ms. Cunningham. This may have had its genesis, or been aggravated, by Ms. Miller's actions surrounding the death of their father. Ms. Miller appears to have been the sole administrator of her father's final estate in Rochester, New York, and Ms. Cunningham claims, did not account to the satisfaction of Ms. Cunningham for her doings during and after her father's decline and death.

We give weight to the probate court's finding that Cunningham's refusal to provide Miller with the accounting was "grounded on pre-existing animosity." The probate court heard the live testimony of Miller and Cunningham, while we must rely on a cold transcript. Nevertheless, regardless of her personal motives, Cunningham's position that no such accounting was owed was based on a reasonable and ultimately correct interpretation of the Iowa Trust Code. On our de novo review, we do not find Cunningham withheld the accounting *solely* because of animosity toward Miller. In light of the other factors discussed above, we do not find any animosity between these sisters justifies requiring Cunningham to personally pay the fees she incurred in litigating the accounting issue.

We hold the probate court abused its discretion by ordering Cunningham to personally pay the fees and expenses attributable to resisting Miller's request for an accounting. Miller did not show Cunningham mismanaged the trust or was guilty of fraud, abuse, inappropriate transfers, or other malfeasance. The trust, and not Cunningham personally, should pay the fees and costs Cunningham

incurred in resisting Miller's request for an accounting, without any reduction. Cunningham is also entitled to have the trust pay her reasonable appellate attorney fees to be determined on remand.

Wibe's fees, as temporary administrator, present a closer question. He stepped into Trimble's shoes and therefore was entitled to an accounting for the period preceding Trimble's death. Cunningham argues she provided Wibe with the records in the same format provided to Trimble. On our de novo review, we are satisfied the parties reasonably disagreed over the form of accounting owed. We do not believe Cunningham acted so unreasonably as to require her to pay Wibe's fees. We hold Wibe's fees should be paid by the trust.

That leaves Miller's fees. In her petition, Miller requested reimbursement of her attorney fees from Cunningham, as trustee, and did not alternatively request the fees be paid from the trust. The probate court relied on a false premise in directing Cunningham to personally pay Miller's fees—that Cunningham wrongfully withheld the predeath accounting. Our reversal on that issue renders Cunningham the prevailing party. We also note that fourteen of the sixteen nonparty beneficiaries took Cunningham's side of the accounting issue. We hold Miller must bear her own fees for litigating that issue unsuccessfully, particularly given her failure to prove any malfeasance, fraud, or abuse by Cunningham.

**V. Conclusion.**

For the foregoing reasons, we reverse the order of the probate court allocating fees and remand with instructions for the probate court to determine the reasonable appellate attorney fees incurred by Cunningham and to direct the trust to pay those appellate fees and the $34,830.55 she previously incurred. The trust shall also pay the

reasonable fees incurred by the temporary administrator Wibe of $3018.75. Miller shall bear her own fees, and the costs of this appeal are taxed against her.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

All justices concur except Zager, J., who takes no part.