# IN THE COURT OF APPEALS OF IOWA

No. 14-0157
Filed April 22, 2015

**LINDA COOPER,**
　　　　Plaintiff-Appellant,

**vs.**

**LYNNETTE S. JORDAN, Trustee of
the Dorothy L. DeMean Revocable
Trust,**
　　　　Defendant-Appellee.
_____

　　　　Appeal from the Iowa District Court for Jones County, Robert Sosalla,

Judge.


　　　　Beneficiary of trust appeals adverse judgment in action against trustee.

**AFFIRMED IN PART AND REVERSED IN PART.**


　　　　Robert S. Hatala of Simmons, Perrine, Moyer & Bergman, P.L.C., Cedar

Rapids, for appellant.

　　　　Robert N. Downer and Dennis J. Mitchell of Meardon, Sueppel & Downer,

P.L.C., Iowa City, for appellee.


　　　　Heard by Vogel, P.J., McDonald, J., and Scott, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MCDONALD, J.**

Linda Cooper sued her sibling Lynnette (Sue) Jordan, successor trustee of their mother's trust, asserting claims for negligence and breach of trust. Linda alleged Sue failed to keep in good and habitable condition two houses on the farmstead Linda received from the trust. Linda also alleged Sue engaged in self-dealing by using trust funds to enhance the value of the property Sue received from the trust. Following a bench trial, the district court entered judgment in favor of Sue and dismissed Linda's petition. The district court denied Linda's request for costs and expenses but granted Sue's request for the same. Linda timely filed this appeal.

I.

At the time of her death on August 26, 2009, Dorothy DeMean was trustee of the Dorothy L. DeMean Revocable Trust. Dorothy's daughter Sue was designated as the successor trustee. The trust instrument provided the trust property was to be distributed in equal one-quarter shares per stirpes to Dorothy's four surviving children—Sue, Gene, Linda, and Leann. The trust corpus included four separate farms in Jones and Linn Counties, which the family referred to as the Home Farm, the Wyoming Farm, the Martelle Farm, and the Castle Grove Farm. The siblings agreed each was to receive one of the family farms with the understanding that equalization payments were to be made between and among them to reconcile the difference in value among the farms.

The four farms were transferred out of the trust to the four beneficiaries as tenants in common on February 18, 2011, eighteen months after Dorothy's

death. The exact cause or causes and the person or persons responsible for the delay between the time of Dorothy's death and the time of transfer are disputed, but the delay generally arose out of conflict between Linda and the rest of the family with respect to the farm properties and the terms and conditions under which her son could farm one or more of the properties. Regardless of the exact nature of the dispute, on April 8, 2011, following a family agreement to partition the farms, the farms were deeded to the four siblings individually. Linda was deeded the Home Farm.

The Home Farm comprised one main house, where Dorothy lived until her death, and a smaller house. Linda's family entered the main house on the Home Farm on April 9. They claimed the house was in a state of disrepair. Linda testified there was moisture and water in the basement. She testified the basement ceiling tiles had fallen down. She testified there was mold in the house. She testified raccoons had come into the house through the roof or a vent cover on the roof. Although no raccoons were found in the home, there were raccoon feces in the home. The water to the home had been shut off during the preceding winter. When Linda turned the water on, she discovered some of the water lines were broken. Linda claimed the smaller home on the Home Farm was in a similar state of disrepair. Linda then filed this suit for damages against the trustee.

II.

Actions for a breach of trust by a trustee are brought in a court of equity; review is de novo. *See* Iowa Code § 633A.4501 (2011); Iowa R. App. P. 6.907;

*In re Trust No. T-1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013). We give weight to the district court's factual findings, especially concerning the credibility of witnesses, but are not bound by them. *See Trimble*, 826 N.W.2d at 482.

III.

Linda contends the district court erred in concluding she had not proved her claim regarding Sue's alleged failure to maintain the Home Farm. "A trustee shall administer the trust with the reasonable care, skill, and caution as a prudent person would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust." Iowa Code § 633A.4203. "A trustee shall take reasonable steps under the circumstances to take control of and to safeguard the trust property unless it is in the best interests of the trust to abandon or refuse acceptance of the property." Iowa Code § 633A.4209. It is ordinarily the duty of the trustee who is entrusted with the control and management of a house or other buildings to make such repairs as necessary to preserve it. *See* Restatement (Second) of Trusts § 176, cmt. b, illus. 4. "A violation by a trustee of a duty the trustee owes a beneficiary is a breach of trust." Iowa Code § 633A.450(1). "Except as provided in Section 633A.421(3), to remedy a breach of trust which has occurred or may occur, a beneficiary or co-trustee of the trust may request the court to do any of the following . . . [c]ompel the trustee to redress a breach of trust by payment of money or otherwise." Iowa Code § 633A.4502(c). "A trustee is personally liable for obligations arising from ownership or control of trust property, . . . and for torts committed in the course of

administering a trust only if the trustee is personally at fault."  Iowa Code § 633A.4601(2).

The trust instrument here contains a limitation of liability.  As a general rule, a trustor "may expand, restrict, eliminate, or otherwise alter the duties" prescribed in chapter 633A.  *See* Iowa Code § 633A.4201(2).  Specifically, a trust instrument may relieve a trustee of liability for breach of trust except if "committed intentionally, with gross negligence, in bad faith, or with reckless indifference to the interest of the beneficiary, or for any profit derived by the trustee from the breach."  Iowa Code § 633A.4505.  The district court interpreted the trust language to limit the trustee's liability to conduct rising to the level of gross negligence.  Linda contends this was error.  We conclude the construction of the trust instrument is immaterial under the evidence adduced: Linda failed to prove negligence, let alone gross negligence, and failed to prove the trustee's conduct caused damage to the Home Farm properties.

There is a dearth of evidence supporting the conclusion Sue's conduct was negligent or grossly negligent.  Indeed, other than the mere fact of damage to the Home Farm properties, which we discuss below, Linda has not identified with any specificity the allegedly negligent conduct.  Sue's journal of activities as trustee showed she was actively engaged in the maintenance of the trust property, including the Home Farm.  Sue was in the main house frequently throughout her term as trustee.  She went to the Home Farm almost daily through 2010 to tend to different matters and once or twice per week in 2011 before the property ultimately was transferred out of the trust.  She checked the

humidifiers in the basement of the home. Sue invited the other trust beneficiaries to help clean and maintain the house, to take personal property, and to express any concerns regarding the administration of the trust. In the fall of 2009, after Dorothy's death, Linda, Sue, and Leann worked together to clean the main house on the Home Farm. Linda stopped coming to the home and stopped assisting with clean up around Thanksgiving 2009. However, Sue and Leann continued to work in the house into the summer of 2010, sending approximately twenty-five boxes of items to Goodwill and several pickup loads plus 180 bags of garbage to the dump. Sue hired an auctioneer to dispose of salable items. Sue paid the taxes and other bills related to the Home Farm. She used trust funds to repair the driveway to the Home Farm. The attorney working with the trust noted Sue was one of the best trustees he had ever worked with, rating her a 9.5 on a 1 to 10 scale. We thus conclude Linda failed to prove Sue's actions as trustee were negligent or grossly negligent.

We also conclude Linda failed to prove Sue's conduct caused any damage to the Home Farm properties. The Home Farm was transferred out of the trust to the four beneficiaries as tenants in common on February 18, 2011. Sue's fiduciary duties with respect to that property thus terminated, and the four siblings had joint responsibility for the maintenance of the farm properties after that date. *See Lovrien v. Fitzgerald*, 66 N.W.2d 458, 462 (1954) (stating that cotenants have reciprocal duty to protect the estate held in common). Linda thus was required to prove the alleged damage to the properties occurred sometime after Dorothy's death and prior to February 18, 2011.

At the time of Dorothy's death, the main house on the Home Farm was not in good condition. Dorothy and her former husband were frugal, and the main house reflected their frugality. The original building was more than 100 years old. Over time, the family made several additions to the property, including the addition of repurposed old corn cribs to expand the space. The manner of construction of the additions left portions of the home out of plumb. Because of the way the home was built, some of the water lines were susceptible to freezing. For years, water penetrated the home, causing mold to grow in the basement and the main level of the house. Moisture in the basement caused tiles in the drop ceiling to absorb water, sag, and fall. In 2008, standing water in the basement soaked the carpet and caused damage to one wall. There was mold in the family room on the main floor that was hidden from view by house plants and discovered only after Dorothy's passing. Close to the time the Home Farm was transferred from the trust to the beneficiaries, there was no indication of any property damage beyond what existed at the time of Dorothy's death. Family members who were in the main house in December 2010 and January 2011 testified the house was in about the same condition then as when Dorothy died in August 2009, with the exception of some mess left by the auction company. The family members did not see animal damage or water damage to the house at that time.

At the time of Dorothy's death, the second home was in poor condition. The second home was a trailer with some additions. Dorothy had turned off water to the house because the water line kept breaking. Dorothy's son testified

that the secondary house had no value at the time of Dorothy's death. There was no evidence to the contrary.

On de novo review, we conclude the evidence does not establish when the alleged damage occurred. Neither of the properties was in good condition at the time of Dorothy's passing. Sue expended time and effort in maintaining the properties while serving as trustee. The witnesses who were in the properties close to the time the Home Farm was transferred to the siblings as tenants in common observed no damage to the properties above and beyond the condition they were in at the time of Dorothy's death. It is likely the additional damage occurred after the transfer of the property to the siblings as tenants in common. Linda had access to the home after this time, but she took no action to enter the property at the time of transfer or otherwise protect the condition of the home prior to it being deeded to her.

It was Linda's burden to prove Sue breached her fiduciary duty and that any such breach caused damage. Linda has not identified the specific conduct she contends constitutes a breach of duty. The evidence showed Sue acted with reasonable care, skill, and caution to take control of and safeguard the trust property. Linda also failed to establish when the property damage to the Home Farm occurred and thus failed to establish any causal link between the alleged breach of duty and the damage to the property. Accordingly, the district court did not err in entering judgment in favor of Sue and adverse to Linda.

IV.

The district court determined Sue was entitled to recover costs and expenses incurred in defending against Linda's suit. The district court awarded attorneys' fees in the amount of $38,606.00 and other costs and expenses in the amount of $1397.02, for a total award of $40,003.02. Linda first contends the district court should not have imposed the costs and expenses against her.

A district court, "as justice and equity may require," has discretion to award reasonable costs and expenses, including attorney fees, for litigation expenses incurred in the administration of a trust. *See* Iowa Code § 633A.4507. Our supreme court has interpreted the phrase "justice and equity" to encompass two determinations: the initial determination of whether a party is entitled to recover costs and expenses, and, if so, the secondary determination of the amount of the costs and expenses. *Trimble*, 826 N.W.2d at 491. The *Trimble* court adopted nonexclusive criteria in interpreting what justice and equity require. *See id.* Those include

> (a) reasonableness of the parties' claims, contentions, or defenses; (b) unnecessarily prolonging litigation; (c) relative ability to bear the financial burden; (d) result obtained by the litigation and prevailing party concepts; and (e) whether a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons in the bringing or conduct of the litigation.

*Id.* (quoting *Atwood v. Atwood*, 25 P.3d 936, 947 (Okla. Civ. App. 2001)). The decision to award fees is discretionary, *In re Estate of Frye*, No. 13-1170, 2014 WL 3511827, at *14 (Iowa Ct. App. Jul. 16, 2014), and we review the district court's award for an abuse of discretion. *See Trimble*, 826 N.W.2d at 482.

In determining whether costs and expenses should be awarded, the district court analyzed each of the *Trimble* factors. With respect to the first factor—the reasonableness of the parties' positions—the district court noted the failure of proof of negligence and causation. Concerning the second factor, the district court concluded both sides proceeded with due diligence. Regarding the third factor—ability to bear the financial burden—the district court concluded Linda was able to bear the burden because she inherited a farm valued in 2009 at $1.3 million dollars, which had only appreciated in value since the time of valuation. With respect to the final factor, the court noted the evidence showed Linda felt wronged by her mother's not naming Linda the trustee and that when a conflict arose, it was of Linda's making. Nonetheless, the district court concluded Linda's motivation in bringing suit was a "sincere feeling" that she was wronged. After weighing all the factors, the court found it appropriate for Linda to pay Sue's attorney fees and costs. After reviewing the *Trimble* factors, we cannot conclude the district court abused its discretion in determining costs and expenses should have been assessed against Linda. *See id.* at 491.

Linda also challenges the amount of the costs and expenses awarded. "An applicant for attorney fees has the burden to prove that the services were reasonably necessary and that the charges were reasonable in amount." *City of Riverdale v. Diercks*, 806 N.W.2d 643, 659 (Iowa 2011). The district court should consider several factors, including "the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the

standing and experience of the attorney in the profession, and the customary charges for similar service." *Id.* "The district court is considered an expert in what constitutes a reasonable attorney fee, and we afford it wide discretion in making its decision." *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 733 (Iowa 2005).

We conclude the amount of the costs and expense award was within the district court's discretion with one exception. The district court taxed as costs deposition expenses for depositions not used at trial. As a general rule, deposition expenses are not taxable as costs unless the deposition testimony is offered and admitted at trial. *See* Iowa Rule of Civil Procedure 1.716. Here, the district court concluded the statutory provision allowing for reimbursement of "costs and expenses" was broader than that provided for by rule 1.716. In similar circumstances, the supreme court has "construed 'all costs' language in other fee-shifting statutes to limit reimbursement for litigation expenses to those allowed as taxable court costs." *City of Riverdale*, 806 N.W.2d at 659-60 (citing cases). We see no textual basis or other reason unique to section 633A.4507 to deviate from the supreme court's past practice. We also reject Sue's argument that costs should include the deposition expenses because the depositions were useful in preparing for trial. *See City of Ottumwa v. Taylor*, 102 N.W.2d 376, 380 (1960) (rejecting argument that "all costs" in section 472.33 includes "all expenses reasonably necessary in preparation and trial of the appeal"). Accordingly we find the district court abused its discretion in ordering payment of costs and expenses related to deposition expenses in the amount of $1109.40

and reverse that portion of the award. *See Carson v. Rothfolk*, No. 12-1021, 2013 WL 4009790, at *7 (Iowa Ct. App. Aug. 7, 2013) (reversing district court award of deposition costs where only de minimis use of deposition at trial).

V.

For the reasons set forth above, we affirm the judgment of the district court in part, and we reverse in part.

**AFFIRMED IN PART AND REVERSED IN PART.**