# IN THE COURT OF APPEALS OF IOWA

No. 18-0625
Filed July 24, 2019

IN RE THE MARRIAGE OF MARIBEL MATHERLY
AND CARL W. MATHERLY

Upon the Petition of
MICHAEL STEVEN MATHERLY for the ESTATE OF MARIBEL MATHERLY,
        Petitioner-Appellant/Cross-Appellee,

And Concerning
CARL W. MATHERLY,
        Respondent-Appellee/Cross-Appellant,

and

MARY ELIZABETH SLEZAK,
        Intervenor/Cross-Appellee.
_____

MICHAEL STEVEN MATHERLY,
As Trustee on behalf of the
MARIBEL MATHERLY TRUST,
as amended,
        Plaintiff-Appellant/Cross-Appellee,

vs.

CARL W. MATHERLY,
        Defendant-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


        Former spouses appeal and cross-appeal the property division in their

dissolution-of-marriage decree.  Trustee of the wife's trust appeals the dismissal

of a breach-of-fiduciary-duty claim against the husband.  **AFFIRMED.**

William W. Graham and Wesley T. Graham of Graham, Ervanian & Cacciatore, L.L.P., Des Moines, for appellant/cross-appellee.

Shaun Thompson of Newman Thompson & Gray PC, Forest City, for appellee/cross-appellant.

Joseph G. Gamble and Tara J. Higgins of Duncan, Green, Brown & Langeness, P.C., Des Moines, for intervenor Mary Elizabeth Slezak.

Heard by Tabor, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

Maribel Matherly, and subsequently her estate, appeal, and Carl Matherly cross-appeals, the property division in their dissolution-of-marriage decree. Maribel contends that an equitable distribution of the marital estate required her to receive the entirety of the marital property due to Carl's negative contributions to the marriage. Carl challenges the court's finding that assets in an investment account under Maribel's name are a resulting trust in the name of their daughter, Mary Elizabeth (MaryBeth), who intervened in the underlying trial. Carl contends the assets are marital property to be divided equitably between himself and Maribel. Michael Steven Matherly (Steven), as trustee of the Maribel Matherly Trust, appeals the district court's dismissal of his claims against Carl.

## I. Background Facts and Proceedings

Carl and Maribel were married in September 1946. The marriage produced three children, now adults: Sheryl, MaryBeth, and Steven. From the 1950s through the pendency of the dissolution proceedings they lived in the same home in Johnston. During the course of the marriage, Carl provided the majority of the marital income while Maribel was primarily responsible for managing the home and raising the children. In the late 1950s, Carl established Park Investment Company (Park Investment), which provided financing for companies that were unable to obtain financing through traditional bank loans. Park Investment was successful for many years and provided Carl and Maribel with substantial income.

In the late 1950s or early 1960s, Carl provided financing to a company in Forest City, Iowa. That business relationship continued for many years and Carl eventually worked for that company, serving as vice president and on the board of

directors. Carl's business activities required him to be away from the home for the majority of the workweek, typically returning home on Friday or Saturday where he remained for the weekend. Carl's work often required him to be in Forest City.

In the mid-to-late 1970s, Carl began an extra-marital relationship with a woman named Doris, who lived and owned a shop in Forest City. When Carl travelled to Forest City for business, he stayed with Doris. At some point, Maribel became aware of an extra-marital relationship, but she was unsure of who the other party was at the time. When Maribel confronted Carl, he promised to end the relationship. Unbeknownst to Maribel, Carl continued to live with Doris when he travelled for business. Carl told Maribel and their children that he was working in Illinois, Missouri, or Nebraska when he was actually with Doris in Forest City.

During the course of their marriage, Carl and Maribel gave each of their children numerous gifts, including cash and stocks. In 1977, Carl helped MaryBeth establish the Mary Elizabeth Matherly Trust (MEM Trust) with the proceeds of the gifts from her parents. Carl was named as trustee. The terms of the trust required Carl to pay MaryBeth the trust's net income and any amount Carl, in his discretion, deemed necessary for MaryBeth's maintenance, health, and comfort until MaryBeth turned fifty. Once MaryBeth turned fifty, MaryBeth was to receive the remaining principal and the trust would terminate. Under the trust, Carl was not required to provide an accounting of the trust to MaryBeth unless requested. He did provide MaryBeth information about the trust's earned interest each year so MaryBeth could include that information in her tax returns. MaryBeth claimed she did not receive a copy of the trust instrument.

In 1981, Carl received a salary of approximately $125,000 from the Forest City company. Due to a business dispute, Carl left the company that year but did not inform Maribel. He continued to tell her that he was working and traveling for the Forest City company; but in reality, Carl did not obtain other paid employment and his source of income consisted of proceeds from his investments and a farm that he purchased in the 1970s (Fremont Farm).

He then began working in Doris's shop for free, primarily handling the shop's bookkeeping. At the time Carl and Doris met, Doris had debts of approximately $250,000. Carl arranged with Doris's creditors to forgive her debt after she paid a small percentage. Throughout their relationship, Carl gifted Doris money, a car, paid for home improvements, and managed Doris's investment accounts. When with Doris in Forest City, Carl withdrew money from the marital bank account for cash.

In 1985, Carl deeded the Fremont Farm to Steven seeking to remove his name from any property of value in order to keep it from the reach of his creditors. During the marriage, Carl created other trusts in order to protect assets from creditor liability relating to his business work. He contends that despite the deed, the Fremont Farm was not intended to be Steven's property. The deed was recorded a few days later.

In July 1988, a document (Trust Document A) was signed by both Carl and Maribel and notarized. The document purported to establish the Maribel Matherly Trust (Maribel Trust). The trust declaration listed Steven as the trustee. A second trust document (Trust Document B) was also created in July 1988 but listed Carl as the trustee. Trust Document B included Carl and Maribel's signatures and was

notarized. Maribel did not remember signing two separate documents and only remembered typing up one document. The listed notary public on both documents filed an affidavit, stating she believed she only notarized one version of the trust document. She believed that her handwritten name, date, and signature on both documents appeared to be too identical to come from separate documents. Carl initially denied altering either document. During trial, however, he stipulated Trust Document B was an alteration. Both Trust Documents A and B provided that Maribel and Carl would each receive one-half of the income of the trust. Upon the death of either spouse, the other would then receive the entire income of the trust. After both of their deaths, the trust residue would then be distributed equally to their children and the trust dissolved.

In 1990, a third document (Trust Document C) was prepared and signed by both Carl and Maribel that also purported to establish the Maribel Trust. Trust Document C was not notarized. Trust Document C named Maribel as trustee and provided the entire trust income would be paid to her. Upon Maribel's death, the trust income would then be paid to Carl and, after his death, the residue would be distributed equally to their children and the trust dissolved. Maribel signed the document as the designated settlor and trustee while Carl signed and was designated as the beneficiary.

In 1989, Steven deeded the Fremont Farm to the Maribel Trust. The deed was recorded in 1993. In 1996, a deed was recorded. The deed identified that it was a correction and supplementation of the 1985 deed from Carl to Steven. The correction deed listed Carl and Maribel as the grantors and the Maribel Trust as

the grantee. At the same time, Carl filed an affidavit identifying himself as the trustee of the Maribel Trust.

During the course of the marriage, Carl oversaw the farm's operations. After the establishment of the Maribel Trust, he continued overseeing the farm and, in addition, conducted business for the farm in the role of trustee of the Maribel Trust. Monies received by the Fremont Farm from grain sales were deposited into Carl and Maribel's joint bank account. Within a few days, those monies were then transferred into one of Carl's investment accounts. Both Carl and Maribel made the grain-sale deposits into their joint bank account. Both also designated themselves as trustee of the Maribel Trust when endorsing checks for deposit.

In 1993, Carl transferred the proceeds of the MEM Trust into an investment account designated "Maribel Matherly, Special M.E.M. Account" (Maribel-MEM account). Carl claimed he received a letter from MaryBeth's husband that led him to believe that MaryBeth's marriage was in trouble and her husband would attempt to take the trust's assets. He also claimed MaryBeth requested the transfer of the MEM Trust assets in order to protect them from her husband. A communication regarding the transfer from the financial institution holding the MEM Trust stated that an authorization signed by MaryBeth was required to transfer the funds to the Maribel-MEM account. The communication includes a notation that the request was completed in March 1993. After Carl transferred the assets into the investment account, he continued to act as if the account was for MaryBeth's benefit. When MaryBeth asked about the state of the MEM Trust, Carl reported that it was "doing great." In the following years, MaryBeth continued to sign authorizations relating to the MEM Trust. Carl paid the taxes for the trust. In 2003,

he filed a tax return noting that it was the final return for the trust with zero interest earned and no taxes owed. In approximately 2003, Carl terminated the MEM Trust.

Carl deposited funds into the Maribel-MEM account at least once. In November 2005, the Maribel-MEM account had a value of $228,224. Carl subsequently removed the MEM designation from the account, leaving it in only Maribel's name (Maribel Matherly account). He testified that he removed the MEM designation for multiple reasons, including his belief that he had extended MaryBeth the same amount of money outside of the trust and he had already given her more money than her siblings. By December, the statement for the same account number listed only Maribel's name. In June 2006, the month MaryBeth turned fifty, the value of the Maribel Matherly account was $207,389.

During the course of the marriage, Carl admitted he often signed other family member's signatures on documents, claiming to do so for convenience purposes since he was away from home for most of the week. This included signing Maribel's name on checks and on an investment document that allowed transfers between accounts Maribel was associated with and an account for Doris. He also admitted to signing Steven's name under penalty of law as the designated trustee of the Maribel Trust on a document sent to the Internal Revenue Service.

Eventually, Steven became suspicious of Carl and his activities and hired a private investigator. Steven learned Carl was staying with Doris in Forest City when he claimed to be elsewhere. Steven subsequently informed his sisters who then informed Maribel. Maribel filed a petition for dissolution of marriage on June 22, 2016. The next day, Steven filed suit against Carl, alleging Carl has

wrongfully held himself out to be and acted as the trustee of the Maribel Trust, including executing documents and diverting income away from trust assets. Steven further claimed that even if Carl was legally permitted to act on the trust's behalf, his actions of diverting trust income and assets constituted a breach of fiduciary duty, a wrongful taking, and Carl had been unjustly enriched by his actions. Steven assumed the duty of trustee of the Maribel Trust in June.

In July, Carl wrote a letter to MaryBeth and Sheryl asking for assistance with some of the property at issue in this case. In the letter Carl stated:

> [Steven] has shown [Maribel] as owning a Scottrade Account with $250,000 value. [T]hat's only partially true. Yes, the account is in her name but with my conversation many times to you, MaryBeth, that money is yours and has been for many years "You can have it anytime you want," I said. I hope I can get this error corrected. It's total value is "yours" not [Maribel's].

MaryBeth claimed she was unaware of the transfer of the trust's assets to the investment account until she received the letter. After receiving the letter, she investigated the circumstances of the trust and found documents relating to the trust, including the instrument that created the trust and Carl's letter requesting the asset transfer to the Maribel-MEM designation. In August, Carl filed answers to both petitions, denying the allegations of wrongdoing and suggested Maribel's dissolution petition was the result of Steven's undue influence, Maribel's dementia, or both.

By agreement of the parties, the court consolidated the dissolution and trust actions for purposes of trial, as the resolution of each case was dependent upon the determination of whether the Maribel Matherly account was marital property. Later, the court granted MaryBeth's motion to intervene based upon the parties'

consent. MaryBeth asserted that the Maribel Matherly account listed by both Maribel and Carl as a marital asset was the remnant of the MEM Trust.

At the time of trial, both Maribel and Carl were in their nineties. In January 2018, the court filed its rulings for both cases. It determined the Maribel Matherly account was the successor to the MEM Trust and Carl's transfer of the MEM Trust assets into the Maribel-MEM account, which Carl subsequently renamed the Maribel Matherly account, created a resulting trust in favor of MaryBeth. The court found Carl's claims about the MEM Trust and Maribel Matherly account lacked credibility. Further, MaryBeth was not put on notice about the issues regarding the ownership of the assets in the trust until Carl repudiated the trust's existence in 2016. Carl's statute-of-limitations defense thus failed and the court declared MaryBeth the owner of the assets in the Maribel Matherly account, removing the account from the court's consideration of the marital property between Maribel and Carl.

As for the Maribel Trust, the court determined Trust Document C was the controlling instrument. As a result, the Maribel Trust owned all the interest in the Fremont Farm. The court rejected Maribel's contention that the farm's placement in the Maribel Trust created a gift and was thus her separate property not to be included in the distribution of the marital estate. Despite the farm's transfer into the Maribel Trust, it remained a marital asset. The court ordered the Fremont Farm be sold and the net proceeds divided equally between Carl and Maribel. Further, the court ordered Maribel to continue to receive the entire income from the Maribel Trust, the proceeds from the grain sales, as provided in Trust Document C. Carl

was not entitled to receive any of the trust income nor any of the farm revenue from June 2016, when Steven assumed the trustee responsibility.

The court also rejected Maribel's argument that the court's division of the martial estate should take into consideration Carl's negative contributions. The court did find Carl dissipated the estate through his transfer of marital assets to Doris and an unaccounted decrease in his investment account from the time of the court's temporary orders in the dissolution matter and trial. Based upon these findings, the court ordered the sale of the marital home and increased Maribel's share of the proceeds by $34,800.

With regard to Steven's claims against Carl relating to the Maribel Trust,[1] the court found that Maribel affirmed or consented to Carl's decisions and conduct when Carl acted as the trustee. Based upon these findings, the court determined that Iowa Code section 633A.4506(1)(a) and (c) (2016) provided Carl immunity from Steven's claims. Accordingly, the court dismissed Steven's action against Carl.

Maribel appeals,[2] contending the trial court erred by failing to recognize Carl's negative contribution to the marital estate in its determination of the distribution of the marital estate. Further, she challenges the dismissal of the trust claim, claiming the suit was not barred by section 633A.4506 because she did not consent to or affirm Carl's actions relating to the Maribel Trust as she had no

---

[1] The only trust document that identified Steven as trustee was Trust Document A, which Steven did not sign.

[2] Maribel died during the pendency of this appeal. The executor of her estate was substituted as the party. *See* Iowa Code § 625A.17. For ease of readership, we will continue to identify the claims as hers rather than claims of her estate.

knowledge of his actions and had no access to the information. She also requests an award of appellate attorney fees.

Carl cross-appeals, contending the trial court erred by not awarding him half of the farm income for the 2016 crop year until the time the farm is sold. He also challenged the determination that the Maribel Matherly account was a resulting trust in favor of MaryBeth. He contends he disavowed the MEM Trust in 2005 and claimed the property as his own when he removed the MEM designation from the investment account. Further, he argues that because he failed to distribute the trust assets in June 2006 when MaryBeth turned fifty, the statute of limitations either began in 2005 or at the latest June 2006. Because MaryBeth did not bring her claim until the present action, her claim to the investment account is barred. He further argues the court erred by finding the MEM Trust was originally funded with $250,000 in assets as the record is insufficient to prove the value of the trust when it was established in 1977. Carl also requests an award of appellate attorney fees, payment to be apportioned between Maribel and Steven.

## II. Standard of Review

We review dissolution-of-marriage cases de novo. Iowa R. App. P. 6.907; *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). "On appeal, we give weight to the fact findings of the trial court but are not bound by them." *Larsen*, 912 N.W.2d at 448. We will not disturb the trial court's ruling unless there was "a failure to do equity." *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "Proceedings concerning the internal affairs of a trust . . . are tried in equity" therefore our review is de novo. *In re Trust No. T-1 of Trimble*, 826 N.W.2d 474,

482 (Iowa 2013). We review the trial court's "interpretation of statutory provisions for corrections of errors at law." *Id.*

**III.    Analysis**

A.    Marital Estate

The court must equitably divide the martial estate. *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009). "The partners in the marriage are entitled to a just and equitable share of the property accumulated through their joint efforts." *Id.* "[M]arriage does not come with a ledger," *In re Marriage of Fennelly*, 737 N.W.2d 97, 103 (Iowa 2007), so the court must consider what is equitable and fair depending on the circumstances. *Hazen*, 778 N.W.2d at 59. However, what is equitable may not necessarily mean an equal division of the marital property. *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007). Instead, the court must consider a number of factors to determine what is equitable, including:

> (a) The length of the marriage.
> (b) The property brought to the marriage by each party.
> (c) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.
> (d) The age and physical and emotional health of the parties.
> . . . .
> (i) Other economic circumstances of each party, including pension benefits, vested or unvested. Future interests may be considered, but expectancies or interests arising from inherited or gifted property created under a will or other instrument under which the trustee, trustor, trust protector, or owner has the power to remove the party in question as a beneficiary, shall not be considered.
> (j) The tax consequences to each party.
> . . . .
> (m) Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21(5). While we review the case de novo, "we accord the trial court considerable latitude in making [the marital-property-distribution]

determination and will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005) (quoting *In re Marriage of Romanelli*, 570 N.W.2d 761, 763 (Iowa 1997)).

### 1. Maribel Matherly Account

Before making an equitable division of the marital estate, we must first determine which property is marital property and thus subject to division. Here, the parties disagree about the classification of the Maribel Matherly account. Carl challenges the trial court's determination that the Maribel Matherly account was a resulting trust in favor of MaryBeth, contending the account is marital property to be divided between himself and Maribel. Maribel conceded during trial that despite the fact that the account is in her name, the funds in the account are not marital property and instead belong to MaryBeth.

When "the owner of property gratuitously transfers the property and manifests in the trust instrument an intention that the transferee should hold the property in trust but the trust fails, the transferee holds the trust estate as a resulting trust for the transferor or the transferor's estate." Iowa Code § 633A.2106. "A resulting trust is a reversionary, equitable interest implied by law in property that is held by a transferee, in whole or in part, as trustee for the transferor or the transferor's successors in interest." Restatement (Third) of Trusts § 7 (Am. Law Inst. 2003). "[A] resulting trust arises from an intention that is legally attributed to a transferor based on the nature of the transaction, rather than from manifested intent." *Id.* § 7 cmt. a.

Here, no one disputes that in 1977, MaryBeth provided the assets and expressly stated her intention to create a trust with Carl as trustee, evidenced in

the document establishing the trust. Carl also acknowledged the assets in the MEM Trust were for MaryBeth's benefit. The MEM Trust ultimately failed when Carl, without consent from MaryBeth,[3] transferred the assets into an investment account under Maribel's name. Once Carl transferred the assets into the investment account under Maribel's name and designated it with MaryBeth's initials, he created a resulting trust, in favor of MaryBeth.

Carl's actions after the transfer provide further evidence that a resulting trust was established as he acted with the intention that the assets in the account were for MaryBeth's benefit. First, he initially designated the investment account with MaryBeth's initials. Further, even after removing her initials, he held out the account to be for MaryBeth and informed her of the status of the account when asked. Carl continued to hold the account out as MaryBeth's even after the beginning of proceedings in this case. In July 2016, after Maribel filed for dissolution, Carl wrote to MaryBeth and her sister, clearly stating that the funds in the investment account were MaryBeth's. At trial, Carl also testified that he continued to treat the investment account as MaryBeth's up until the dissolution proceedings.

While Carl provides several arguments about other claims MaryBeth may have against him as a result of his actions relating to her trust, the sole issue presented here is who is the owner of the assets in the Maribel Matherly account and whether those assets are marital property to be divided in the dissolution case. Upon our review of the record, we agree with the trial court that a resulting trust

---

[3] The trial court specifically found Carl's claim that MaryBeth asked him to transfer the funds lacked credibility.

was established in favor of MaryBeth when Carl transferred the assets of the MEM Trust into an investment account, first designated as Maribel-MEM and subsequently the Maribel Matherly account. Accordingly, the assets in the Maribel Matherly account are not marital property and are not subject to division in the distribution of the marital estate. We affirm the trial court on this matter.

### 2. Marital Property Distribution

We now turn to the distribution of the marital estate. First, Carl's challenge to the marital-estate distribution focuses on the farm income for the harvest years of 2016 and 2017. He challenges the trial court's order that Maribel would continue to receive the entirety of the farm income as provided in Trust Document C and that he had no claim to the farm revenue for crop years 2016 and 2017, as Steven assumed the responsibility as trustee in June 2016. Carl contends he should receive half of the farm proceeds from those harvest years, arguing that whether Trust Document A or C controls, the income from the farm proceeds is marital property to be distributed equitably between the parties. Maribel seemingly does not contest which trust document controls with respect to the court's determination that she would continue to receive the entirety of the farm income from harvest years 2016 and 2017. Instead, Maribel argues the decision to award the income and harvest proceeds was an exercise of the court's discretion when dividing the marital estate.

On our review, we agree the farm proceeds Maribel received under the trust were marital property given the status of the farm as marital property when it was bought and has remained as marital property since. Thus, the farm income was subject to the court's division, and after taking into consideration the factors

contained in Iowa Code section 598.21(5), we do not find the court granting Maribel the farm income was inequitable given the circumstances of this case. Accordingly, we affirm.

Maribel challenges the final marital-estate distribution, arguing the trial court failed to take into consideration Carl's negative contribution to the marriage when dividing the marital estate. She argues she should have been awarded the entire marital estate due to Carl's (1) failure to earn income after leaving his Forest City job and then subsequently working without compensation at Doris's shop, (2) transfer of marital assets to Doris and other unknown accounts, (3) reckless investment of marital funds, and (4) dissipation of marital assets during the pendency of this case.

Maribel cites to a number of cases outside Iowa in which those courts unequally divided marital property based on one spouse's financial misconduct and neglect. However, "Iowa is a no-fault state." *Fennelly*, 737 N.W.2d at 103.

> Spouses agree to accept one another "for better or worse." Each person's total contributions to the marriage cannot be reduced to a dollar amount. Many contributions are incapable of calculation, such as love, support, and companionship. "Financial matters . . . must not be emphasized over the other contributions made to a marriage in determining an equitable distribution."

*Id.* at 104 (quoting *In re Marriage of Miller*, 552 N.W.2d 460, 465 (Iowa Ct. App.1996)). Maribel does not point to any Iowa precedent in which a trial court considered the negative contributions of one spouse in its determination of an equitable division of the marital property. Upon our review, we agree with the trial court and find that awarding Maribel the entirety of the marital estate based upon

Carl's negative contributions would be inequitable.[4]   Further, after taking into consideration the circumstances in this case and the section 598.21(5) factors, we find the trial court's division of the marital estate was equitable and affirm the marital-property distribution.

B.      Maribel Trust

Steven, as trustee of the Maribel Trust, challenges the court's finding his claims of breach of fiduciary duty against Carl were barred pursuant to Iowa Code section 633A.4506(1)(a) and (c).   In making its decision, the trial court determined Trust Document C governed the trust after finding both Trust Documents A and B unenforceable as Steven never signed Trust Document A as trustee and Carl altered Trust Document B.

Carl is only named the trustee of the Maribel Trust under Trust Document B, and we agree with the trial court that this document is invalid.   Carl conceded at trial Trust Document B was an alteration of Trust Document A.   As for Trust Document A, in order for it to be a valid trust instrument, it must be written and either "signed by the trustee" or one that "convey[s] the trust property signed by the settlor."   Iowa Code § 633A.2103(1).   Steven did not sign Trust Document A, and the trust document does not identify that the farmland is or would be placed into the trust.   Further, in 1989, the deed conveying the farmland to the Maribel

---

[4] The trial court did recognize Maribel's claim of dissipation and adjusted the marital-property distribution based upon Carl's dissipation of marital assets.   Unlike Maribel's negative-contribution claim, the dissipation doctrine has precedential support.   *See In re Marriage of Kimbro*, 826 N.W.2d 696, 700–01 (Iowa 2013) (discussing the dissipation doctrine); *Fennelly*, 737 N.W.2d at 104 ("[D]issipation of assets is a proper consideration when dividing property."); *In re Marriage of Goodwin*, 606 N.W.2d 315, 321 (Iowa 2000) ("[A] spouse's disposal of assets that would otherwise be subject to division in the dissolution may properly be considered in making an equitable distribution of the parties' property.").   Maribel does not challenge the adjustments on appeal.

Trust was signed by Steven. Section 633A.2103(1) required the settlor, Maribel, to sign the written instrument. Accordingly, neither Trust Document A nor B serve to establish an enforceable trust under section 633A.2103(1).

Under subsection (3) of section 633A.2103, "[i]f an owner of property while living transfers property to another person to hold upon a trust, the written instrument evidencing the trust must be signed" either "by the settlor, concurrently with or before the transfer" or "by the trustee, concurrently with or before the transfer, or after the transfer but before the trustee has transferred the property to a third person." Here, Carl admittedly deeded the farm to Steven in order to hide the property from creditors related to his investment business. Steven then deeded the farm to the Maribel Trust in 1989. As determined above, this document did not establish an enforceable trust, as Maribel did not sign the conveyance. She did, however, sign Trust Document C, which purported to establish the Maribel Trust. We agree with the trial court that Trust Document C is "inartfully drafted" as its terms provided for Maribel's benefit but designated Carl as the beneficiary. However, we agree that this is the controlling trust instrument as it is the only one that meets the elements required under section 633A.2103(3)(b). Though Trust Document C was executed after Steven's conveyance of the property to the trust, at the time Maribel signed Trust Document C as its designated trustee, she had not transferred the farm to another party. Further, Maribel and Carl both signed and quitclaimed their interest in the farm to the Maribel Trust well after Trust Document C's execution. Accordingly, Trust Document C is the controlling trust document.

While Trust Document C designates Maribel as the trustee, Carl acted as such until 2016. Neither party seemingly disputes this, though Carl contends that Maribel sometimes acted as trustee. After June 2016, Steven took over the role of trustee. Steven's claims are that while Carl acted as the trustee, Carl breached the duties of a trustee by failing to provide the entirety of trust income to Maribel as required by Trust Document C and instead took that income and placed it into an investment account. Further, Steven contends Carl failed to prudently invest the farm proceeds once deposited into his investment account and, after selling parts of the farmland, he did not keep the sale proceeds separate from other funds nor preserve them for the trust. Instead, Steven argues Carl gifted a portion of sale proceeds to the three children and Doris, but made no such gift to Maribel. Steven further argues Carl's failure to prudently invest the trust income resulted in damage to the accumulated trust income left in the trust. Steven seeks damages representing the difference between the current value of the trust and what he believes it should have been if properly managed.

The trial court found that Maribel consented to or affirmed Carl's actions which constituted breaches of fiduciary duty, therefore under Iowa Code section 633A.4506(1)(a) and (c), Steven's claims were barred. On appeal, Steven argues that Maribel was unaware of Carl's transactions relating to the trust therefore she could not consent nor affirm to his actions and thus section 633A.4506 is not a bar to his claims of breach of fiduciary duty.

Unless the terms of a trust expressly make the trust irrevocable, the settlor of a trust may modify or revoke the trust. *Id.* § 633A.3102(1). Here, the language of the trust does not make it irrevocable, as Maribel reserved her right to amend,

revoke, or alter the trust. "For a revocable trust, however, the trustee's duties of prudence, loyalty, and impartiality are owed solely to the settlor while the settlor is still alive and competent." *Trimble*, 826 N.W.2d at 488. "A violation by a trustee of a duty the trustee owes a beneficiary is a breach of trust." Iowa Code § 633A.4501(1).

> A beneficiary may charge a trustee who commits a breach of trust with the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred, or, if greater, the amount of profit lost by reason of the breach.

*Id.* § 633A.4503. However, section 633A.4506(1) provides a trust beneficiary may not hold a trustee liable for a breach of the trust if the beneficiary either "consents to the conduct" or "affirms the transaction" constituting the breach. Nevertheless, section 633A.4506(2) and (3) does provide exceptions to trustee immunity:

> (2) A beneficiary may hold a trustee liable for breach of trust despite a consent, release, or affirmance by the beneficiary if, at the time of the consent, release, or affirmance, all of the following applied:
> (a) The beneficiary did not know of the beneficiary's rights.
> (b) The beneficiary did not know the material facts known to the trustee or which the trustee should have known.
> (c) The trustee did not reasonably believe that the beneficiary knew the beneficiary's rights and that the beneficiary knew material facts known to the trustee or which the trustee should have known.
> (3) A beneficiary may hold a trustee liable for breach of a trust despite a consent, release, or affirmance by the beneficiary if the consent, release, or affirmance was induced by improper conduct of the trustee.

Steven contends the trial court erred by finding that Maribel was aware of how Carl invested the monies derived from the Fremont Farm and allowed him to continue for decades. He challenges the court's finding that though Maribel never opened the statements from the investment account, she had access to its

equivalent as the statements were incorporated into the couple's joint tax filings. Steven claims the court erred by deciding, based upon these findings, that Maribel affirmed and consented to Carl's action, thus barring claims of breach of fiduciary duty.

Neither challenges the court's finding that Carl acted as trustee of the Maribel Trust, despite not being designated as such. Maribel signed Document C which named her as trustee but she allowed Carl to act as trustee. Maribel signed some documents as trustee, but for the most part, Carl held himself out to be trustee and took actions in the trust's name. This included depositing proceeds from the farm into their joint bank account and then subsequently transferring those proceeds into one of his investment accounts.

Carl primarily ran the Fremont Farm. However, Maribel kept the records for the farm. She kept track of the farm's yield, expenses, and income. Maribel testified and Steven concedes that she was aware that the farm proceeds that both Carl and Maribel initially deposited into the couple's joint bank account were then transferred into the investment accounts. Maribel made several of the deposits into the investment accounts and balanced the couple's checkbook for their joint bank account. Further, while Steven contends that Maribel did not have any access to the investment accounts information and thus was unaware of what occurred within those accounts, Maribel admitted she reviewed the information in the couple's tax returns. She initially testified that Carl hid the information by folding over the form so that only the signature block was visible, but clarified under cross-examination that she reviewed all of the entries on the form. Maribel also signed each return under penalty of perjury stating that she "examined [the] return

and the accompanying schedules and statements," and the information contained in the return was "true, correct, and complete." Each return contained tax information and schedules from the investment accounts. Based upon our review of the record, we agree with the trial court that Maribel had access to the equivalent of the monthly investment account statements. Thus, she was or should have been aware of Carl's actions. Accordingly, we find she consented to and affirmed Carl's conduct he undertook as trustee of the Maribel Trust. We also find no exception applies and, as such, Steven's claims of breach of fiduciary duty against Carl are barred pursuant to section 633A.4506. We affirm the court's decision.

C.      Appellate Attorney Fees

On appeal, "attorney fees are not a matter of right, but rather rest in this court's discretion." *Okland*, 699 N.W.2d at 270. We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (quoting *Okland*, 699 N.W.2d at 270). Based upon these considerations, we decline to award appellate attorney fees.

**IV.    Conclusion**

We find Carl created a resulting trust in favor of his daughter, MaryBeth, when he transferred the assets of her trust into an investment account without her consent. The resulting trust is not marital property and not subject to the court's division of the marital estate. We find the trial court's division of the marital estate equitable, taking into consideration the factors under Iowa Code section 598.21(5) and the circumstances in this case. We further find Steven's claims against Carl relating to Maribel's trust are barred under Iowa Code section 633A.4506. Based

upon these findings, we affirm the trial court's decision in its entirety. We decline to award appellate attorney fees. Costs on appeal are assessed one-third to Maribel's estate, one-third to Carl, and one-third to the Maribel Matherly Trust.

**AFFIRMED.**